# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

ALAN DECHTER, LEON KADIS,                  )
MERRY SMITH, TRAUTE MARSHALL,              )
REBECCA KATZ, and GEORGE FLESH,            )
                                           )
       Plaintiffs                      )
                                           )
v.                                         )       CIVIL ACTION NO. 19-10736-DJC
                                           )
CITY OF NEWTON SCHOOL COMMITTEE,           )
RUTH GOLDMAN, in her official capacity as  )
NEWTON SCHOOL COMMITTEE                     )
CHAIRPERSON, DAVID FLEISHMAN in his        )
official capacity as NEWTON                 )
SUPERINTENDENT OF SCHOOLS, HENRY           )
TURNER in his official capacity as PRINCIPAL )
OF NEWTON NORTH HIGH SCHOOL, JOEL          )
STEMBRIDGE in his official capacity as     )
PRINCIPAL OF NEWTON SOUTH HIGH             )
SCHOOL, JONATHAN BASSETT in his official   )
capacity as CHAIR OF THE HISTORY AND       )
SOCIAL SCIENCES DEPARTMENT OF              )
NEWTON NORTH HIGH SCHOOL, JENNIFER         )
MORRILL in her official capacity as CHAIR OF )
THE HISTORY DEPARTMENT OF NEWTON           )
SOUTH HIGH SCHOOL, DAVID BEDAR in his      )
Official capacity as HISTORY TEACHER AT     )
NEWTON NORTH HIGH SCHOOL, JAMIE            )
RINALDI in his official capacity as HISTORY )
TEACHER AT NEWTON SOUTH HIGH               )
SCHOOL, SUSAN WILKINS, in her official      )
capacity as HISTORY TEACHER AT NEWTON      )
NORTH HIGH SCHOOL, and PAUL ESTIN, in      )
his official capacity as HISTORY TEACHER AT )
NEWTON SOUTH HIGH SCHOOL,                   )
                                           )
       Defendants                      )
_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS AMENDED COMPLAINT**

Defendants Newton School Committee, et al. ("the School Defendants"), hereby move this Court to dismiss the Amended Complaint in its entirety.  Distilled down, the 495-page Amended Complaint and Exhibits chronicle Plaintiffs' version of their attempts over the past seven years to censor certain materials they disagree with from the Newton Public Schools' curriculum.  Because Newton educators have rejected Plaintiffs' demands, Plaintiffs bring this lawsuit, repackaging their complaints about the curriculum into mandamus and First Amendment claims against individual teachers and administrators.

The mandamus claim posits that the School Defendants have failed to execute their duties as educators under state law for declining to remove the materials Plaintiffs disagree with from the curriculum.  The First Amendment claim alleges that the School Defendants are indoctrinating Newton students with tenets of Islam through the ninth grade world history curriculum.  Notably, Plaintiffs are not students in the Newton Public Schools, or parents of the same.

None of these claims survive a motion to dismiss.  With respect to Plaintiffs' mandamus claims (Counts I – VI), they fail because Plaintiffs lack standing to bring these claims; alternative remedies exist, thus rendering mandamus relief inappropriate; and Plaintiffs have failed to state a proper mandamus claim upon which relief can be granted.  Plaintiffs' First Amendment claim (Count VII)[1] should also be dismissed because it is improperly alleged, Plaintiffs lack standing to proceed with such a claim, and Plaintiffs have failed to state a First Amendment claim upon

---

[1]  The Amended Complaint erroneously lists two "Count VIs."  See Amended Complaint, pp. 70-71.  For clarity, the School Defendants refer to the First Amendment claim – the second Count VI – as Count VII throughout this motion.

which relief can be granted.  For all these reasons, the School Defendants respectfully request

that the Court dismiss the Amended Complaint in its entirety, with prejudice.

I.       STANDARD OF REVIEW FOR MOTION TO DISMISS

In determining whether to grant a 12(b)(6) motion, the Court must consider whether there

is sufficient factual matter in the complaint to "state a claim to relief that is plausible on its face."

Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Court

should rely on its "judicial experience and common sense" and disregard allegations that are

mere conclusions, and thus not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S.

662, 679 (2009); see also Gross v. Bohn, 782 F. Supp. 173, 177 (D. Mass. 1991) ("[l]egal

conclusions, deductions, or opinions" contained in a complaint "are not given a presumption of

truthfulness").

To survive a motion to dismiss, a plaintiff is "required to set forth factual allegations,

either direct or inferential, respecting each material element necessary to sustain recovery under

some actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Bald factual assertions or unsupported conclusions are insufficient:

> A pleading that offers labels and conclusions or a formulaic recitation of the
> elements of a cause of action will not do.  Nor does a complaint suffice if it tenders
> naked assertions devoid of further factual enhancement.

Iqbal, 556 U.S. at 678-79 ("Where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not show[n] —that

the pleader is entitled to relief.") (citations and quotations omitted); see also Maldano v.

Fontones, 568 F.3d, 263, 266 (1st Cir. 2009).  Moreover, the Court need not accept unfounded

legal conclusions asserted in a complaint.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at

555 ("Threadbare recitals of the legal elements, supported by mere conclusory statements, do not

suffice to state a cause of action.")); Gross, 782 F. Supp. at 177 (legal conclusions, deductions

and opinions contained in a complaint are not given a presumption of truthfulness); Redmond v. Bd. for Corr. of Naval Records, 2016 U.S. Dist. LEXIS 33282, *6 (D. Mass. March 2016) (Sorokin, J.) (a complaint "must set forth 'more than labels and conclusions, . . . and a formulaic recitation of the elements of the cause of action will not do.' ") (quoting Twombly, 550 U.S. at 555).

For the reasons stated below, Plaintiffs have failed to state any valid claims upon which relief may be granted.  The entire Amended Complaint should therefore be dismissed as a matter of law.

II.     PLAINTIFFS' MANDAMUS CLAIMS SHOULD BE DISMISSED BECAUSE THEY LACK STANDING TO BRING SUCH CLAIMS, ALTERNATIVE REMEDIES EXIST, THUS RENDERING MANDAMUS RELIEF INAPPROPRIATE, AND PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In Counts I – VI, Plaintiffs seek mandamus relief pursuant to M.G.L. c. 249, § 5 to enforce the School Defendants' purported violations of the following state laws and regulations:

- Count I:  Violation of M.G.L. c. 76 § 5.  ". . . No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, gender identity, religion, national origin or sexual orientation."  This count is alleged against all Defendants.

- Count II:  Violation of 603 CMR 26.05(1).  "All public school systems shall, through their curricula, encourage respect for the human and civil rights of all individuals regardless of race, color, sex, gender identity, religion, national origin or sexual orientation."  This count is alleged against all Defendants.

- Count III:  Violation of M.G.L. c. 71, § 37.  "The school committee in each city . . . shall establish educational goals and policies for the schools in the district consistent with the requirements of law and statewide goals and standards established by the board of education."  This count is alleged against Defendants School Committee and Goldman.

- Count IV:  Violation of M.G.L. c. 71, § 59.  The superintendent "shall manage the system in a fashion consistent with state law and the policy determinations of [the] school committee."  This count is alleged against Defendant Fleishman.

- Count V:  Violation of M.G.L. c. 71, § 59B.  "Principals employed under this section shall be the educational administrators and managers of their schools and shall supervise the operation and management of their schools and school property, subject to the supervision and direction of the superintendent." [and] "It shall be the responsibility of the principal in consultation with professional staff of the building to promote participatory decision making among all professional staff for the purpose of developing educational policy."  This count is alleged against Defendants Turner and Stembridge.

- Count VI:  Violation of 603 CMR 26.05(2).  "Teachers shall review all instructional and educational materials for simplistic and demeaning generalizations, lacking intellectual merit, on the basis of race, color, sex, gender identity, religion, national origin or sexual orientation. Appropriate activities, discussions and/or supplementary materials shall be used to provide balance and context for any such stereotypes depicted in such materials." This count is alleged against Defendants Bassett, Morrill, Bedar, and Rinaldi.

The mandamus statute provides a civil cause of action through which a plaintiff can seek to compel a public officer to perform an official duty.  M.G.L. c. 249, § 5.  Mandamus relief is, by definition, an "extraordinary" remedy, which "may be granted only to prevent a failure of justice in instances where there is no alternative remedy."  New Bedford Educators Ass'n v. Chairman of Massachusetts Bd. of Elementary & Secondary Educ., 92 Mass. App. Ct. 99, 111 (2017); Murray v. Comm., 447 Mass. 1010, 1010 (2006) ("Relief in the nature of mandamus is extraordinary, and is granted in the discretion of the court where no other relief is available.").

   A.  Plaintiffs lack standing to bring mandamus claims because they do not have a personalized interest in this matter and cannot invoke the "public right" exception to normal standing rules.

### i.  The Public Right Doctrine

Standing is a core jurisdictional requirement in all civil actions.  Perella v. Massachusetts Turnpike Authority, 55 Mass. App. Ct. 537, 539 (2002).  In general, plaintiffs seeking mandamus relief are required to meet the same key standing requirements as they would in any civil action.  Id. ("[w]here a plaintiff seeks mandamus relief, the question of standing is one of critical significance.  From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of

suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government.") (citations and quotations omitted); see also Alliance, AFSCME/SEIU, AFL-CIO v. Comm., 427 Mass. 546, 549 (1998) (plaintiffs "must have a particularized interest, personal to them, in order to have standing to seek mandamus.").  It is Plaintiffs' burden to demonstrate standing.  ACLU-NJ v. Township of Wall, 246 F.3d 258, 261 (3rd Cir. 2001); Town of Norwood v. F.E.R.C., 202 F.3d 392, 405 (1st Cir. 2000).

Here, Plaintiffs concede in the Amended Complaint that they have no particularized injury due to the School Defendants' alleged actions, because they are not pupils or parents within the Newton Public Schools.  Rather, they seek to "procure the enforcement of a public duty under the public right doctrine."  See Amended Complaint, ¶ 4.  Plaintiffs thus invoke the public right doctrine as a basis for standing.  See also Amended Complaint, ¶ 6 (Plaintiffs claim "standing to seek an order in the nature of a writ of mandamus by virtue of their Massachusetts residence, as "private parties who are legitimately concerned in the performance by public officers of a public duty.").

The public right doctrine is a very narrow exception to the usual standing requirements. It provides a limited path for a plaintiff with no personalized injury in a particular case to claim standing to sue for enforcement of a clear-cut public duty.  Perella, 55 Mass. App. Ct. at 539; Tax Equity Alliance for Mass. v. Commissioner of Revenue, 423 Mass. 708, 714 (1996); Bancroft v. Bldg. Comm'r of City of Boston, 257 Mass. 82, 84 (1926) ("The general rule is that to maintain a petition for mandamus the petitioner must show some private right or interest beyond the right and interest of the public. But when the question is one of public right and the purpose is to procure the performance of a public duty, and no other remedy is open, a petitioner

need not show that he has any special interest in the result; it is sufficient that as a citizen he is interested in the due execution of the laws.").

Because the public right doctrine is "in such obvious tension" with normal standing requirements, it is narrowly construed.  Perella, 55 Mass. App. Ct. at 540 (citations and quotations omitted); see also Alliance, AFSCME/SEIU, AFL-CIO, 427 Mass. at 550-51.  Thus, the doctrine applies "only where a public officer owes a *specific duty* to the public to perform some act or service not due the government as such or to administer some law for the public benefit which he is refusing or failing to perform or administer."  Perella, 55 Mass. App. Ct. at 540 (citing Kaplan v. Bowker, 333 Mass. 455, 460 (1956)); see also Tax Equity Alliance for Mass., 423 Mass. at 714.  The action to be compelled must arise from a "clear and unequivocal" statutory obligation that the government actor is refusing to perform:

> [T]he public right doctrine has always been limited to the enforcement of clear and unequivocal duties, such as election officials' duty to count ballots correctly, *Brewster v. Sherman,* 195 Mass. 222, 225, 80 N.E. 821 (1907); the Secretary of the Commonwealth's duty to omit from the ballot an initiative question where the petition failed to describe the proposed law accurately, *Brooks v. Secretary of the Commonwealth,* 257 Mass. 91, 93–94, 153 N.E. 322 (1926); and the Boston building commissioner's duty to deny a permit where the proposed building would plainly violate a statute, *Bancroft v. Building Commr. of Boston,* 257 Mass. 82, 84–85, 153 N.E. 319 (1926).

Perella, 55 Mass. App. Ct. at 540; Simmons v. Clerk-Magistrate of the Boston Div. of the Housing Ct. Dept., 448 Mass. 57, 59-60 (2006) ("A complaint in the nature of mandamus is 'a call to a government official to perform a clear cut duty") (citations and quotations omitted).  "Only then can a person suffering the legal harm compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government."  Perella, 55 Mass. App. Ct. at 540 (citing Kaplan, 333 Mass. at 459).

Courts have declined to find standing under the public right doctrine when the official actions plaintiffs seek to compel are discretionary, as opposed to discrete and ministerial.  In

New Bedford Educators Ass'n v. Chairman of the Massachusetts Board of Elementary and Secondary Educ., 92 Mass. App. Ct. 99 (2017), the Massachusetts Appeals Court affirmed the dismissal of a mandamus claim for lack of standing where union plaintiffs dissatisfied with the government's creation of a "turnaround plan" for chronically underperforming schools sought to challenge the plan through the courts.  By statute, the Commissioner of the Massachusetts Department of Elementary and Secondary Education and Board of Elementary and Secondary Education were required to create "turnaround plans" for schools designated as chronically underperforming.  While the statute established specific procedures that had to be followed to develop the plans, and roles for particular officials in doing so, it granted the Commissioner "broad authority" to actually implement changes to these schools.  Id. at 101-02.  The court dismissed plaintiffs' claim for lack of standing because they had failed to "establish[] that they are seeking the enforcement of any nondiscretionary duties" under the statutory scheme.  Id. at 112.  Rather, plaintiffs "have requested mandamus relief in the hope that the commissioner and the board will be ordered to act in a new and different manner when creating and approving the turnaround plans."  Id.

The Massachusetts Appeals Court reached a similar result in Perella, there affirming the dismissal of a mandamus claim for lack of standing where plaintiff had sought to compel the Massachusetts Turnpike Authority (MTA) to use land under its control in a certain way.  55 Mass. App. Ct. at 541.  As in New Bedford Educators Ass'n, the Perella plaintiff lacked standing under the public right doctrine because he was seeking to "reverse a discretionary decision that was well within the statutory responsibilities of the [MTA] and cannot be enforced by mandamus."  Id. (noting that the challenged government action was "within the [MTA's] management prerogative intended in the authorizing legislation" and "a matter of business

discretion."). <u>See</u> <u>also</u> <u>Murray</u>, 447 Mass. at 1010 (mandamus is not an appropriate avenue of

relief "to compel performance of discretionary acts."); <u>Urban Transport, Inc. v. Mayor of Boston</u>,

373 Mass. 693, 698 (1977) ("It is well settled that the relief provided in the nature of mandamus

does not lie to compel the municipal officer to exercise his or her judgment or discretion in a

particular way."); <u>Baun v. Board of Selectmen of Ashland</u>, 2015 WL 3769821, at *2-3 (Mass.

App. Ct. June 18, 2015) (denying standing under public right doctrine because plaintiffs were

"seek[ing] to reverse discretionary decisions within the board's authority," not a "clear and

unequivocal dut[y].").

> ii. <u>None of the provisions cited in Counts I – VI set forth a clear and</u>
> <u>unequivocal public duty that could create a basis for standing under</u>
> <u>the public right doctrine.</u>

The legal obligations of teachers and administrators under the statutory scheme charged

in Counts I – VI are plainly not "clear and unequivocal" mandates.  To the contrary, the plain

language of these provisions requires teachers and administrators to use their judgment and

discretion to execute their various roles within the school system in accordance with state law.

Because these provisions do not set forth any "clear and unequivocal" duties, they do not provide

a basis for standing under the public right doctrine, and Counts I – VI should be dismissed.

<u>Perella</u>, 55 Mass. App. Ct. at 540.

> 1. <u>The provisions cited in Counts I and II do not set forth <em>any</em></u>
> <u>duty to act, let alone a "clear and unequivocal" public duty.</u>

In Counts I and II, Plaintiffs seek mandamus relief to enforce M.G.L. c. 76, § 5 (Count I)

and 603 CMR 26.05(1) (Count II).  Both are general provisions that prohibit discrimination:

M.G.L. c. 76, § 5 bars discrimination in public school admissions, and 603 CMR 26.05(1)

requires public schools to "encourage respect for the human and civil rights of all individuals" in

their curricula.

Neither provision sets out any specific affirmative duty for a particular government official to execute – let alone a "clear and unequivocal" duty for an official to act in a particular way.  Perella, 55 Mass. App. Ct. at 540.  This is fatal to Plaintiffs' efforts to claim public right doctrine standing under these provisions, and as such, both Counts I and II should be dismissed for lack of standing.  Id.; New Bedford Educators Ass'n, 92 Mass. App. Ct. at 112.

> 2. The provisions cited by Plaintiffs in Counts III – VI set forth discretionary duties that cannot form the basis for standing under the public right doctrine.

The provisions cited by Plaintiffs in Counts III through VI set out various roles for different educators within the school system.  Like the statutory scheme at issue in New Bedford Educators Ass'n, these provisions set forth *general objectives* for each official to accomplish in his or her role, but clearly contemplate significant discretion in *how* the officials are to accomplish these goals.  92 Mass. App. Ct. at 101, 112.  They are thus at core discretionary duties, and, as such, Plaintiffs lack standing to enforce them under the public right doctrine.  Perella, 55 Mass. App. Ct. at 541; Alliance, AFSCME/SEIU, AFL-CIO, 427 Mass. at 550-51.

M.G.L. c. 71, § 37 (Count III) requires the School Committee to "establish educational goals and policies for the schools in the district consistent with the requirements of law."  There are no specific mandates; rather, the creation of these policies and goals is left to the discretion of the School Committee members in each district, so long as its members operate "consistent with the requirements of law."

The job descriptions for the superintendent and principal included in M.G.L. c. 71, §§ 59 and 59B (Counts VI and V) provide similarly high-level overviews of each position, while obviously contemplating the use of significant discretion to carry out the enumerated tasks.  Section 59 requires the superintendent to "manage the system in a fashion consistent with state

law and the policy determinations of that school committee" – again, vesting discretion as to *how* to achieve this management objective with the superintendent.  Section 59B states that principals "shall be the educational administrators and managers of their schools and shall supervise the operation and management of their schools and school property."  Neither provision defines how a superintendent or principal is to "manage" their various organizations "within state law" – that is left to the discretion of individual officials.

Count VI seeks mandamus relief to enforce 603 CMR 26.05(2).  This provision requires teachers to review their curricular materials for "simplistic and demeaning generalizations," and to "provide balance and context" for any such materials.  This provision, like the others, is inherently a discretionary dictate, which requires teachers to use their judgment to review the curriculum and make decisions about how to present sensitive materials in the classroom.

The fact that the above-listed provisions set forth specific roles for educators (to "manage" the system, or "review" the curriculum) does not render them nondiscretionary when the execution of these tasks is *inherently* discretionary.  None of the provisions cited in Counts III – VI require educators to implement *particular* policies, tell them *how* to carry out their duties, or require the use of *particular* materials in the curriculum.  As such, they are analogous to the statutory schemes at issue in New Bedford Educators Ass'n and Perella, which set forth duties for certain public officials, but vested considerable discretion in those officials to decide how the duties are to be executed.  92 Mass. App. Ct. at 112; 55 Mass. App. Ct. at 541.  The Massachusetts Appeals Court found mandamus relief inappropriate in both these instances due to the discretionary nature of the duties at issue.  New Bedford Educators Ass'n, 92 Mass. App. Ct. at 112; Perella, 55 Mass. App. Ct. at 541.  See also Massachusetts Redemption Coalition, Inc., v. Secretary of Exec. Office of Environmental Affairs, 68 Mass. App. Ct. 67, 70 (2007) (finding

mandamus inappropriate to enforce statutory scheme which required official to promulgate and revise regulations, as these mandates "granted the Secretary broad discretion to fashion regulations which in her judgment effectuate the goals of the" law); Baun, at *3 (no standing under mandamus to challenge Board's discretionary decision to enter purchase and sale agreement and extend closing deadline; Board had "considerable discretion" to determine how to carry out sale and "such [discretionary] duties cannot be enforced by mandamus.").

Indeed, *Plaintiffs themselves* acknowledge the discretionary nature of these duties in the Amended Complaint:

- "While Defendants have broad discretion in how they 'through their curricula, encourage respect for the human and civil rights of' Jews and Israelis . . ." Amended Complaint, ¶ 44.

- "Although the teacher Defendants may have broad discretion in how they 'review all instructional and educational materials for simplistic and demeaning generalizations, lacking intellectual merit' against Jews and Israelis. . ." Amended Complaint, ¶ 45.

- "While they can choose how to act, they cannot choose not to act."  Amended Complaint, ¶ 46.

Plaintiffs have failed to meet their burden to demonstrate public right doctrine standing in this case, where the provisions they seek to enforce through mandamus either set forth discretionary duties or none at all, and where *they themselves* admit that the duties they seek to enforce via mandamus are discretionary.  As such, Counts I through VI should be dismissed for lack of subject matter jurisdiction.  See Perella, 55 Mass. App. Ct. at 541; New Bedford Educators Ass'n, 92 Mass. App. Ct. at 112.

B.  Mandamus relief is inappropriate when other enforcement methods are available.

Plaintiffs cannot properly pursue mandamus relief when other avenues exist to enforce the above-cited provisions.  By definition, mandamus is an extraordinary remedy, where relief is

not "a matter of right," but rather a matter "of sound judicial discretion." Lutheran Serv. Assn. of New England, Inc. v. Metropolitan Dist. Comm'n., 397 Mass. 341, 345 (1986); Anzalone v. Admin. Office of Trial Court, 457 Mass. 647, 655 (2010) ("Mandamus is. . . an extraordinary remedy, invoked sparingly by the court in its discretion.").  Massachusetts courts have been clear that mandamus is "inappropriate except to prevent a failure of justice in instances where there is *no other adequate remedy*." Mass. Redemption Coalition, Inc., 68 Mass. App. Ct. at 69 (emphasis added) (citations and quotations omitted); Simmons, 448 Mass. at 60 (denying mandamus when plaintiffs "have an adequate and effective remedy, namely, an appeal from the assessment of entry fees and surcharges by the Housing Court Department and, subsequently, by the BHA."); Lutheran Serv. Ass'n of New England, Inc., 397 Mass. at 344 ("In the absence of an alternative remedy, relief in the nature of mandamus is appropriate to compel a public official to perform an act which the official has a legal duty to perform"); Coach & Six Restaurant, Inc. v. Department of Public Works, 363 Mass. 643, 644-45 (1973) (listing examples where mandamus does not apply because alternative remedies available); New Bedford Educators Ass'n, 92 Mass. App. Ct. at 111 (relief under mandamus "is extraordinary and may be granted only to prevent a failure of justice in instances where there is no alternative remedy."); Perella, 55 Mass. App. Ct. at 540.

Plaintiffs themselves correctly cite "two potential statutory remedies" available to enforce the statutes under which they seek mandamus relief:  enforcement under M.G.L. c. 76, § 16, and through the Massachusetts Department of Elementary & Secondary Education (DESE) administrative process.  See Amended Complaint, ¶¶ 47-48.  Nonetheless, Plaintiffs aver that they are entitled to mandamus relief anyway because they themselves cannot pursue these statutory remedies.

This attempted end-run around existing causes of action is not an appropriate use of mandamus.  Mandamus is appropriate "*where there is no other adequate remedy*" – not where there *are* alternative remedies, but Plaintiffs either will not, or cannot, seek them.  <u>Massachusetts Redemption Coalition, Inc.</u>, 68 Mass. App. Ct. at 69 (emphasis added).

Importantly, the fact that an alternative cause of action exists *but is not available to Plaintiffs* does not mean that Plaintiffs can pursue mandamus relief.  The Massachusetts Appeals Court rejected exactly this argument in <u>Massachusetts Redemption Coalition, Inc.</u>, there denying business and non-profit owner plaintiffs' claim for mandamus relief against a state agency charged with regulating bottle recycling.  68 Mass. App. Ct. at 71.  The <u>Massachusetts Redemption Coalition, Inc.</u> plaintiffs argued they were entitled to mandamus relief because they had "no alternative remedy to settle their private disputes with [the agency] or to enforce their own 'rights' under the bottle bill."  <u>Id</u>.  The court rejected this argument, noting that the bottle bill statute authorized the Attorney General to prosecute any alleged violations and did not create a cause of action for private parties.  <u>Id</u>.  It was not permissible for plaintiffs to circumvent the statute by bringing a mandamus action when the legislature had already defined a particular path for enforcement.

Allowing Plaintiffs to seek mandamus relief here, despite the existence of alternate causes of action, would completely undermine the legislative efforts which resulted in M.G.L. c. 76, § 16 and the DESE administrative process – specific vehicles created by the Legislature to adjudicate just the types of claims Plaintiffs raise here.  Writ large, this principal would allow any party, anywhere, to choose the option of pursuing mandamus relief over other existing causes of action defined by the legislature.  This would blow open a form of relief that is by definition "extraordinary" and only granted in the court's discretion.  <u>See</u> <u>Anzalone</u>, 457 Mass. at

655.  Because alternative remedies exist to adjudicate Plaintiffs' claims, mandamus is

inappropriate in this context, and Counts I – VI should be dismissed.

> C.  <u>Plaintiffs have failed to state a claim upon which mandamus relief can be granted
> because they have not alleged a sufficient factual basis to support the proposition that
> the School Defendants failed to act in this case.</u>

Even if the Court finds that Plaintiffs have standing, and that mandamus is appropriate in

this context despite the alternative remedies available, Plaintiffs have failed to state a sufficient

factual predicate to support their claims for mandamus relief.[2]  Fed. R. Civ. P. 12(b)(6).  Counts

I – VI should thus be dismissed.  <u>Iqbal</u>, 556 U.S. at 679.

To put forth a valid claim for mandamus relief, Plaintiffs need to allege sufficient facts to

make out each element of the claims alleged.  <u>Gooley</u>, 851 F.2d at 515.  By definition,

mandamus is a remedy designed to address government *inaction* in the face of an official duty.

Thus, to properly allege a claim for mandamus, Plaintiffs must allege facts sufficient to

demonstrate that the "public officer owes a specific duty to the public to perform some act or

service. . . <u>which he is refusing or failing to perform or administer</u>."  <u>Perella</u>, 55 Mass. App. Ct.

at 540 (emphasis added); <u>see also</u> <u>New Bedford Educators Ass'n</u>, 92 Mass. App. Ct. at 112 ("the

plaintiff must allege a breach of duty owed to the plaintiff by the public defendant.").  The

element of inaction is important, as mandamus is *not* a vehicle for disgruntled plaintiffs "to

obtain a review of the decision of public officers who have acted and to command them to act in

a new and different manner."  <u>Boston Med. Center Corp. v. Sec'y of the Executive Office of</u>

<u>Health & Human Servs</u>., 463 Mass. 447, 470 (2012) (quoting <u>Harding v. Comm'r of Ins</u>., 352

Mass. 478, 480 (1967)); <u>New Bedford Educators Ass'n</u>, 92 Mass. App. Ct. at 112 (mandamus

---

[2]  The School Defendants accept Plaintiffs' facts, as alleged in the Amended Complaint, for
purposes of this Motion to Dismiss only.

denied when plaintiffs "have requested mandamus relief in the hope that the commissioner and

the board will be ordered to act in a new and different manner when creating and approving the

turnaround plans").

        i.  <u>Plaintiffs have alleged no actual facts which could support a finding that
the School Defendants failed to act in accordance with the provisions they
cite.</u>

In the Amended Complaint, Plaintiffs allege that the School Defendants are in violation

of six specific statutes and regulations governing their duties as educators (Counts I – VI).

Despite its length, however, the Amended Complaint contains no specific factual allegations

which could support a finding that the School Defendants have failed to execute their duties in

accordance with the provisions that Plaintiffs themselves have charged.  Almost incredibly – as

recounted below, in Section II(C)(ii) – Plaintiffs' recitation of the facts actually *undermines* their

proposition that the School Defendants have failed to execute the duties cited in the Amended

Complaint.  Because Plaintiffs have failed to state a claim upon which relief can be granted

under these provisions, Counts I – VI should be dismissed.  The School Defendants address each

individual provision below.

As to Counts I and II, Plaintiffs have not alleged any specific instances of inaction with

respect to these provisions.  Nor could they:  as noted in Section II(A)(ii)(1), above, neither

provision cited in these counts imposes any specific duty on any official.  These provisions thus

cannot form the basis of a complaint that an official *failed to act* in a particular way.

As to Counts III through VI, Plaintiffs have not alleged any factual predicate which could

support their claims that the School Defendants have failed to execute the particular duties listed

in these provisions.  For example, Count III alleges that the School Committee and Defendant

Goldman are in violation of M.G.L. c. 71, § 59, which states that they "shall establish

educational goals and policies for the schools in the district consistent with the requirements of law and statewide goals and standards established by the board of education." The Amended Complaint contains no factual allegations to support the proposition that Defendants School Committee and Goldman have failed to follow the duties set out in this particular law. This is fatal to Plaintiffs' claim for relief under this provision, so Count III should be dismissed.

The same defect undermines Plaintiffs' claims in Counts VI and V, in which they allege that Superintendent Fleishman (Count IV) and Principals Turner and Stembridge (Count V) have failed to execute their legal duties to "manage the system in a fashion consistent with state law and the policy determinations of that school committee" (Count IV, alleged against Defendant Fleishman), and to administer and manage their schools (Count V, against Stembridge and Turner). Plaintiffs make no case at all on these claims; nowhere in the Amended Complaint do they articulate facts demonstrating that these administrators have failed to execute their duties as required by these statutes. As such, Plaintiffs have failed to state a claim upon which relief can be granted under Count V.

Plaintiffs' claim under 603 CMR 26.05(2) (Count VI) also fails. This regulation requires teachers to review the curriculum for bias and provide balance and context if needed. While Plaintiffs repeatedly *assert* that the teachers charged in this count are in violation of their duties, they provide no actual *facts* to support these charges. Instead, Plaintiffs devote pages and pages of the Amended Complaint to explaining their opinion that certain materials in the curriculum are biased, and, concomitantly, asserting that Defendants Bassett, Morrill, Bedar, and Rinaldi have failed to execute their duty under 603 CMR 26.05(2) *because the materials Plaintiffs think are biased remain in the curriculum*. See Amended Complaint, *passim*. This assertion, however, is nothing more than an effort to bootstrap Plaintiffs' own personal opinion on the

17

matter to a purported conclusion:  that *because the educators have not removed the materials Plaintiffs do not like, they must not have executed their duty to review the curriculum.*  This flawed syllogism should be rejected for what it is:  an empty conclusion without any actual factual support.  Plaintiffs allege no *actual facts* to support the proposition that the teachers have not reviewed the curriculum as required.  As such, Count VI cannot survive a motion to dismiss.  Fed. R. Civ. P. 12(b)(6).

Given the focus of the Amended Complaint, it should not be surprising that Plaintiffs have failed to ground their complaints in the substance of the actual statutes and regulations that they themselves have alleged.  It merely highlights the ill-fit between their claims and the remedy they seek:  a court order requiring Newton educators to remove the materials Plaintiffs do not like from the curriculum.  The Court should reject this invitation to rewrite the Newton curriculum.[3]  Because the Amended Complaint fails to set forth a factual predicate upon which mandamus relief can be granted, Counts I – VI should be dismissed.  Fed. R. Civ. P. 12(b)(6).

---

[3]  The Supreme Court has warned against federal court involvement in the public schools:

> The Court has long recognized that local school boards have broad discretion in the management of school affairs. . . by and large, public education in our Nation is committed to the control of state and local authorities, and . . . federal courts should not ordinarily intervene in the resolution of conflicts which arise in the daily operation of school systems.

> . . .

> [L]ocal school boards must be permitted to establish and apply their curriculum in such a way as to transmit community values.

Board of Education, Island Trees Union Free School District No. 26 et al. v. Pico, 457 U.S. 853, 863-64 (1982).

ii. <u>Moreover, the facts that Plaintiffs *do* cite in support of their mandamus claims actually undermine the proposition that the School Defendants failed to act in accordance with their obligations.</u>

Almost incredibly, the facts that Plaintiffs *do* include in the Amended Complaint and Exhibits actually undermine their position that the School Defendants have somehow failed to act in accordance with the provisions cited in Counts I – VI.  Instead, their allegations demonstrate that the School Defendants *have* acted in accordance with their statutory obligations – just not to Plaintiffs' liking.[4]  Plaintiffs' empty assertions to the contrary should thus be disregarded in the face of their own stated facts and exhibits.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

For example, Plaintiffs' claim that the School Committee and Defendant Goldman failed to act on Plaintiffs' petition to change the curriculum – apparently in violation of their duties under M.G.L. c. 71, § 37 (Count III) – is undermined by their own factual allegations, in which they state that the School Committee *did* act on Plaintiffs' petition at the November 14, 2018 School Committee meeting.  <u>See</u> Amended Complaint, ¶¶ 171-197 (pp. 62-69).[5]  In paragraphs 172-178 of the Amended Complaint, Plaintiffs describe various entreaties made by Plaintiffs to the School Committee to remove the curricular materials they do not like, focusing on a

---

[4]  Plaintiffs attach over 400 pages of exhibits to the Amended Complaint, and the School Defendants cite to the same in this Motion to Dismiss.  While "[o]rdinarily, a court will not consider documents outside of the pleadings in a motion to dismiss. . . the First Circuit makes a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint."  <u>Griswold v. Driscoll</u>, 625 F. Supp. 2d 49, 55 (D. Mass. 2009) (citations and quotations omitted).

[5]  The School Defendants cite to both paragraph numbers and pages because of an error in Plaintiffs' paragraph numbering in the Amended Complaint:  on page 59, the numbering reverts from 193 back to 162, thus resulting in two paragraphs with each of the subsequent numbers.

"Curriculum Petition" filed with the School Committee on September 17, 2018.  See Amended

Complaint, ¶ 178 (p. 65).  According to Plaintiffs, "Defendants School Committee and Goldman

held the required public hearing with respect to the Curriculum Petition on November 27, 2018."

Amended Complaint, ¶ 180 (p. 66).  At the conclusion of the hearing, the Committee took "a

five-minute break to deliberate," after which point they returned and "denied every request in the

Curriculum Petition."  Amended Complaint, ¶ 191 (page 68); see also Exhibit CCC to Amended

Complaint (letter from the School Committee acknowledging receipt of the Petition and noting

the Committee's decision to reject the requests stated in the Petition).

Plaintiffs' own facts thus make clear that Defendants School Committee and Goldman

*did* act on Plaintiffs' petition – just not to Plaintiffs' liking.  See Boston Med. Center Corp, 463

Mass. at 470.  Plaintiffs have thus failed to allege sufficient facts to make out a claim that these

Defendants failed to act in this case, and which could support a claim for mandamus relief.  As

such, the Court should dismiss Count III.

Plaintiffs' assertions that the School Defendants are in violation of their duty to review

the curriculum are also undercut by Plaintiffs' *own factual recitation* and the exhibits attached to

the Amended Complaint, *which show the opposite*.  In Exhibit A to the Amended Complaint,

Plaintiffs attach a document entitled "Overview of Newton's High School Curriculum From

David Fleishman, Superintendent of Schools," which describes in detail the process through

which Newton educators develop and assess the high school history curriculum:

> The Newton Public Schools value openness and critical thinking.  One of the gifts
> we give our students is the opportunity to carefully listen to and debate different
> perspectives.
> . . .
> With regard to the history curriculum in particular, our mission statement calls for
> students to "appreciate the historical and cultural influences that shape their
> individual identities, our national identity, and the cultures and countries that share
> our planet. . ."

. . .
How do teachers in Newton decide what topics to teach and what materials to use? The topics of most classes in the Newton Public Schools are determined by the State curriculum frameworks and Newton's own curriculum documents, which are publicly available.  Course textbooks are chosen and purchased citywide, after a rigorous selection process involving teachers, students, and administrators. Supplemental teaching materials are gathered by teachers working in collaboration with their colleagues and supervisors.

See Amended Complaint, Exhibit A, ¶¶ 81-82.

Other materials attached by Plaintiffs also corroborate the existence and practice of this internal review process.  In Exhibit Y, Plaintiffs attach a letter written to Defendant Fleishman from the Anti-Defamation League which refers to "the review process through which Newton vets the quality of materials and context of presentations used in the classroom."  See Amended Complaint, Exhibit Y; see also Amended Complaint, ¶ 146 (discussing same).  In Exhibits DD and FF, Plaintiffs attach emails from Department Head Jennifer Morrill in which she states that her department *revised the unit* on the Israeli-Palestinian conflict, to keep it current.  See also Amended Complaint, ¶¶ 154, 156 (discussing same).  In Exhibit VV, Plaintiffs attach a letter from David Fleishman describing policy changes at the School Committee designed to provide guidance on school speakers who will discuss potentially controversial issues with students.  In paragraphs 148-149 of the Amended Complaint, Plaintiffs cite to emails between various teachers that discuss revising the Middle East unit.  In paragraph 165 of the Amended Complaint, Plaintiffs note a "department-wide effort to 'roll out' a new Middle East unit."

The blatant inconsistency between Plaintiffs' empty assertions of inaction and their own facts lays bare the true purpose of Plaintiffs' mandamus action:  to enlist the Court into their efforts to censor the Newton Public Schools' curriculum by issuing an order imposing *Plaintiffs'* judgment as to which curricular materials are appropriate over that of the educators in the district.  This is not the purpose of "extraordinary" mandamus relief and should be rejected.

21

Boston Med. Center Corp., 463 Mass. at 470; New Bedford Educators Ass'n., 92 Mass. App. Ct. at 112; Perella, 55 Mass. App. Ct. at 540.  Because Plaintiffs' own factual recitations and attachments demonstrate that the School Defendants *did* act – but just not to Plaintiffs' liking – Plaintiffs have failed to state a mandamus claim upon which relief can be granted, and these claims should be dismissed.

III.     <u>PLAINTIFFS' FIRST AMENDMENT CLAIM SHOULD BE DISMISSED BECAUSE IT IS IMPROPERLY ALLEGED, PLAINTIFFS LACK STANDING TO PROCEED WITH THIS CLAIM, AND THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.</u>

In Count VII, Plaintiffs have alleged violations of both the Establishment Clause and Free Exercise Clause, <u>see</u> Amended Complaint, ¶¶ 91, 95-101.  Plaintiffs' claims appear to be that[6] (1) the use of a book called *Islam: The Straight Path* in the Newton North High School history curriculum forces Islamic doctrine on students, in violation of the Establishment Clause, <u>see</u> Amended Complaint, ¶ 91; and (2) a group project on the historical hajj at Newton South High School "coerces" students to practice Islam, in violation of both the Establishment Clause and Free Exercise Clauses, <u>see</u> Amended Complaint, ¶¶ 95-101.  Because they have improperly alleged these claims, lack standing to do so, and, in any event, have failed to state a claim upon which relief can be granted, the Court should dismiss Count VII in its entirety.  Fed. R. Civ. P. 12(b)(6).

---

[6] This recounting of Plaintiffs' First Amendment claim is based on a careful read of the lengthy Amended Complaint.  To the extent Plaintiffs attempt to broaden their alleged causes of action in response to this Motion to Dismiss, the School Defendants posit that they have failed to adequately articulate "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

A.  Count VII should be dismissed because Plaintiffs have failed to state a proper cause of action.[7]

As an initial matter, Count VII should be dismissed because it fails to properly allege a cause of action.  While Count VII alleges that all the School Defendants are in violation of "the First Amendment," Plaintiffs have no direct cause of action under the United States Constitution. Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992).  The proper vehicle to allege such a claim is under 42 U.S.C. § 1983.  Because Count VII fails to state a proper cause of action, it should be dismissed.

B.  Plaintiffs' Establishment Clause claim should be dismissed because Plaintiffs lack municipal taxpayer standing to bring this claim and they have failed to state a claim upon which relief can be granted.

i.  Plaintiffs fail to meet their burden to demonstrate municipal taxpayer standing in this case.

Plaintiffs have the burden to establish standing before the Court may proceed to the merits of their First Amendment claim.  ACLU-NJ, 246 F.3d at 261 (plaintiffs bear the burden of proving standing); Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) ("standing to sue is an indispensable component of federal court jurisdiction."); Art. III, U.S. Constitution (limiting the judicial power of the federal courts to the resolution of "Cases" and "Controversies"); Hein v. Freedom From Religion Foundation, Inc., 551 U.S. 587, 598 (2007) ("One of the controlling elements in the definition of a case or controversy under Article III is

---

[7]  A three-year statute of limitations applies to claims under 42 U.S.C. § 1983.  Griswold v. Driscoll, 625 F.Supp.2d 49, 57 (D. Mass. 2009) (noting three-year statute of limitations period for § 1983 claims in Massachusetts); see also Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).  On these grounds alone, Plaintiffs' claim regarding the use of *Islam: The Straight Path* should be dismissed, as Plaintiffs' only factual allegations in support of this particular claim are based on an October 2014 email referencing use of the document and a curricular document obtained in a 2015 public records request.  See Amended Complaint, ¶ 93.

standing.").  To do so, a plaintiff "must make a tripartite showing:  she must demonstrate that she

has suffered an injury in fact, that her injury is fairly traceable to the disputed conduct, and that

the relief sought promises to redress the injury sustained."  <u>Osediacz</u>, 414 F.3d at 139; <u>see</u> <u>also</u>

<u>Hein</u>, 551 U.S. at 598 (plaintiffs are only allowed to pursue a case in the court system if they can

allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely

to be redressed by the requested relief.").  A plaintiff "generally must assert his own legal rights

and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."

<u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>,

454 U.S. 464, 474 (1982) (citations and quotations omitted).  These requirements apply with full

force in the First Amendment context.  <u>Osediacz</u>, 414 F.3d at 141.

        Here, Plaintiffs admit they are not students in the Newton Public Schools, or parents of

students, <u>see</u> Amended Complaint at ¶ 48.  They thus seek standing to pursue their Establishment

Clause claim based on their status as municipal taxpayers in Newton.  Plaintiffs aver that they

are Newton taxpayers who object to the use of their tax dollars to fund the teaching of

viewpoints they do not like within the Newton Public Schools.  Specifically, they allege that

their tax dollars provide partial funding to the Newton Public Schools' budget of $199,753,146.

<u>See</u> Amended Complaint, ¶ 7.  They allege no other harm to themselves other than the economic

harm which results from this generalized use of their tax dollars.[8]

---

[8]  Plaintiffs claim harms to *other persons* – Jewish and Israeli students, and to a person who
spoke at town meetings – in the Amended Complaint, but none of these persons is a party to the
lawsuit.  <u>See</u> Amended Complaint, at p. 2; ¶¶ 163, 167.  It is core to the concept of standing that
*the plaintiff bringing the lawsuit* show an individualized injury; a plaintiff cannot base his claim
on purported harms to third parties.  <u>See Osediacz</u>, 414 F.3d at 139 ("[t]he prudential aspects of
standing include 'the general prohibition on a litigant's raising another person's legal rights.)

Even accepting these factual predicates as true, Plaintiffs have failed to meet their burden to show standing in this case.  ACLU-NJ, 246 F.3d at 261.  While a plaintiff can seek municipal taxpayer standing to pursue an Establishment Clause challenge, to establish economic injury-in-fact based on status as a municipal taxpayer, a plaintiff must establish not just that he or she is a taxpayer, but also must demonstrate "a measurable appropriation or loss of revenue attributable to the challenged activities."  Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 74 (2d Cir. 2001); see also Rogers v. Mulholland, 858 F.Supp.2d 213, 221 (D.R.I. 2012) (plaintiff must show that he or she (1) "pays taxes to the relevant authority, and (2) tax revenues are expended on the challenged practice.").  The second element is critical:  plaintiff must show that *specific tax revenues are expended on the challenged practice* to demonstrate injury sufficient to support a finding of municipal taxpayer standing.  Doremus v. Bd. of Ed. of Borough of Hawthorne, 342 U.S. 429, 434 (1952).

The Supreme Court outlined the parameters of the municipal taxpayer standing doctrine in Doremus, there rejecting a taxpayer's challenge to a Bible reading in the local public schools because the plaintiff failed to show that the challenged activity was "supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school."  342 U.S. at 433.  The Court made clear that, while municipal taxpayers can raise a "good-faith pocketbook action" to municipal expenditures of funds, their status as taxpayers did not relieve them of the burden of demonstrating particularized injury for purposes of standing.  Id. at 434.  Rather, Plaintiffs must meet their burden to show not only that the government action is invalid

> but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.

Id. A municipal taxpayer meets this burden by identifying a "measurable appropriation or disbursement of [] funds *occasioned solely by the activities complained of*." Id. (emphasis added).

Thus, courts have only granted municipal taxpayer plaintiffs standing to challenge an allegedly unconstitutional municipal action if the plaintiff identifies a <u>direct municipal expenditure</u> which funds the challenged activity. See, e.g., Rogers, 858 F.Supp.2d at 222 (taxpayer plaintiffs can challenge field permitting process because "the City expends tax revenue in administering the field permitting process."). Courts have declined to find economic injury sufficient to support standing, however, when a municipal taxpayer plaintiff fails to identify a *specific* municipal expenditure dedicated to the activity at issue. Doremus, 342 U.S. at 434; <u>see also</u> <u>ACLU-NJ</u>, 246 F.3d at 264 (rejecting municipal taxpayer's claim of standing when taxpayers made no showing that the municipality spent any money on the challenged conduct); <u>Freedom From Religion Found., Inc. v. Zielke</u>, 845 F.2d 1463, 1470 (7th Cir. 1988) (declining to find municipal taxpayer standing when plaintiffs alleged no municipal expenditures on the challenged activity); <u>Doe v. Madison Sch. Dist. No. 321</u>, 177 F.3d 789, 797 (9th Cir. 1999) ("If a plaintiff identifies no public funds that were spent solely on the challenged activity, then the plaintiff has not alleged a taxpayer injury.").

Importantly, a plaintiff cannot meet his or her burden to demonstrate municipal taxpayer standing by merely alleging that municipal employees are engaging in the challenged activity in the course of their general duties:

> Nearly all governmental activities are conducted or overseen by employees whose salaries are funded by tax dollars. To confer taxpayer standing on such a basis would allow any municipal taxpayer to challenge virtually any governmental action at any time. Article III, as interpreted by the Supreme Court, requires a good deal more.

Altman, 245 F.3d at 74; see also ACLU-NJ, 246 F.3d at 264 ("[e]ven if we were to assume that the holiday display was erected by paid Township employees, there is no indication that the portion of such expenditure attributable to the challenged elements of the display would have been more than the *de minimus* expenditure that was involved in the Bible reading in Doremus."); Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1, 859 F.3d 1243, 1259-60 (10th Cir. 2017) (plaintiffs cannot establish municipal taxpayer standing because "mere use of facilities or employees' time" in support of allegedly problematic activities was insufficient to "demonstrate[] expenditure of municipal funds.").

In Altman v. Bedford Cent. Sch. Dist., the Second Circuit found that plaintiffs could not proceed under municipal taxpayer standing with their Establishment Clause challenges to various curriculum practices in the schools in a situation closely analogous to the case at bar.  245 F.3d at 73.  The fact that one of the Altman plaintiffs paid taxes, which funded the general school budget, including employees' salaries, was insufficient to establish injury for purposes of standing:

> [W]hat was required for the establishment of taxpayer standing to complain of activities at Pound Ridge Elementary or Fox Lane Middle was a showing of a *measurable appropriation or loss of revenue attributable to the challenged activities at those schools*. We see no indication that such a showing was made. We have seen no evidence, for example, that purchases of crayons, clay, or construction paper were made solely for the activities that plaintiffs challenged.

Id. at 74 (emphasis added).

Here, Plaintiffs have failed to meet their burden to demonstrate injury-in-fact, when they have not pointed to *any* "measurable appropriation or loss of revenue attributable" to the various activities they challenge which could support their claim to municipal taxpayer standing. Altman, 245 F.3d at 74.  Their allegation is simply that they pay taxes in Newton, and that their tax dollars partially fund a general $200 million school budget.  See Amended Complaint, ¶ 7.

These general allegations do not suffice to show that Plaintiffs have suffered particularized

economic harm as required by the municipal taxpayer standing doctrine.  *At best*, their

allegations can be construed as a claim that municipal employees employed by the school system

are engaging in the challenged activities – which is insufficient to make out economic injury

under this doctrine.  Altman, 245 F.3d at 74; ACLU-NJ, 246 F.3d at 264; Am. Humanist Ass'n,

Inc., 859 F.3d at 1259-60.

Moreover, even if Plaintiffs *were* somehow able to itemize the expenditures devoted to

the challenged practices, any such dollar value would plainly be *de minimis* given that they have

only challenged the use of a single publication – *Islam: The Straight Path* – and a single history

curriculum document and grading rubric, both of which were clearly developed by Dr. Estin

himself and not purchased from an outside source.  Such minimal expenditures are insufficient to

support a finding of economic injury for purposes of municipal taxpayer standing.  See ACLU-

NJ, 246 F.3d at 264.

Because Plaintiffs have failed to show injury-in-fact, they lack standing to proceed with

their First Amendment claim, and Count VII should be dismissed.  Fed. R. Civ. P. 12(b)(1).

> ii. Even if the Court finds Plaintiffs have standing to proceed,
>     they have failed to state a valid Establishment Clause claim
>     upon which relief can be granted.

The Supreme Court has set forth three rubrics for courts to analyze when determining

whether an Establishment Clause violation has occurred.  Freedom From Religion Found. v.

Hanover Sch. Dist., 626 F.3d 1, 7 (1st Cir. 2010).  The first test is the three-pronged analysis

established in the Supreme Court decision Lemon v. Kurtzman, which requires the Court to

apply the following three criteria:

> [f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.

403 U.S. 602, 612-13 (1971); Freedom From Religion Found., 626 F.3d at 9.  The second test, the "endorsement analysis," evaluates "whether the challenged governmental action has the purpose or effect of endorsing, favoring, or promoting religion."  Freedom From Religion Found., 626 F.3d at 10.  The third test, the "coercion analysis," evaluates whether the challenged government activity *coerces* a person into practicing a religion.  Id. at 12.

Plaintiffs argue that the School Defendants' use of the above-cited materials violates the third test, by allegedly coercing students into practicing Islam.  They fail to allege facts sufficient to make out a valid claim of coercion, however.

A careful read of the Amended Complaint reveals that Plaintiffs' *entire factual predicate* for their Establishment Clause claim rests on their citation to three curricular documents they received through public records requests in 2013 and 2015:  specifically, to *Islam: The Straight Path*, and to two documents outlining Dr. Estin's hajj lesson.  See Amended Complaint, ¶¶ 80, 81, 95.  Dr. Estin's hajj lesson is attached to the Amended Complaint, at Exhibit DDD and EEE.  Citation to these documents alone, however, is insufficient to set forth a valid claim under the Establishment Clause.

It is well-established that "mere exposure to. . . religious content" is insufficient to state a claim under the Free Exercise Clause.  Freedom From Religion Found., 626 F.3d at 14.[9]

---

[9]  In fact, Massachusetts curricular guidelines actually *mandate* the teaching of history of Islam and other major world religions in high school history classes.  See 2018 History and Social Science Framework, issued by the Massachusetts Department of Elementary and Secondary Education, found at http://www.doe.mass.edu/frameworks/hss/2018-12.pdf.  The Framework contains "World History I Content Standards" which state that students should learn about the "development and diffusion of religions and system of belief c. 500 BCE – 1200 CE," including the following objectives:

Plaintiffs have failed to take the next step, which is to allege particular facts to support their assertion that students are somehow *coerced* by the use of these materials into practicing religion in violation of the Establishment Clause.  For example, Plaintiffs have failed to allege facts establishing the context of how these materials were presented in the classroom, how they fit into the broader world history curriculum, or how students actually executed these lessons.  Nor have Plaintiffs alleged any particular facts to support their conclusory assertion that students were in fact coerced or pressured into *practicing religion* based on the use of the document they cite.[10] At best, Plaintiffs are *guessing* as to how Dr. Estin's hajj unit was delivered to and perceived by students.  Plaintiffs' assertion that students were coerced by the use of these materials, see Amended Complaint, ¶ 101, is thus nothing more than an empty legal conclusion *when they have failed to allege facts to support it*.  It cannot defeat a motion to dismiss in this case.  Iqbal, 556 U.S. at 671.

Moreover, a review of the hajj lesson attached to the Amended Complaint plainly undermines Plaintiffs' assertion that the lesson itself somehow coerces students to practice religion.  See Amended Complaint, Exhibits DDD and EEE.  Dr. Estin's course materials are not

---

1. Map how the Buddhist, Christian, and Islamic religions spread from their places of origin to other parts of Eurasia and Africa to c. 1400 CE, and explain some of the means by which religions spread (e.g., by official government decree, missionary work, pilgrimages, translations of texts, the diffusion of religious imagery and the construction of buildings such as temples, churches, cathedrals, monasteries, and mosques for religious purposes).
2. Describe the central tenets of Hinduism, Judaism, Buddhism, Confucianism, Christianity, and Islam; create a timeline that shows when and where each religion or belief system began.

Id. at pp. 139-141.  Dr. Estin's hajj lesson covers material squarely included in this mandate.

[10] Nor could they, given that they are not students or parents themselves, and they received these materials through a series of public records requests.

religious documents, but rather academic materials that outline a group project in which students examine cultural, historical, and religious aspects of the hajj in accordance with the state curricular guidelines cited in footnote 10.  The academic context of this material could not be more different than the situations presented in cases like Lee v. Weisman, in which the Supreme Court concluded that reading prayers during a high school graduation ceremony violated the Establishment Clause.  505 U.S. 577, 599 (1992).  There, the reading of prayer was done *for the purpose of praying* – unlike Dr. Estin's history lesson, in which students learn about various aspects of the hajj *for the purpose of learning world history*.

Plaintiffs' claim with respect to the use of *Islam: The Straight Path* is also easily dispensed with.  Plaintiffs assert that "[t]his preference of religious doctrine within North's instructional and educational materials violates the Establishment Clause of the U.S. Constitution."  Amended Complaint, ¶ 91.  Their entire factual predicate for this claim, however, appears to be a citation to an email from Defendant Wilkins to Defendant Bassett requesting approval for the use of this book for the ninth grade history team and an excerpt from a class assignment based on the book.  See Amended Complaint, ¶ 93; Exhibit B to the Amended Complaint.  Plaintiffs allege no facts indicating how this book was actually used in class, *if at all*, the context in which the material was presented, or how students perceived the materials.  Nor do they allege any facts to support their assertion that students were somehow *coerced* by the alleged use of this material in the curriculum.  This is plainly insufficient to make out a valid Establishment Clause claim.

Because Plaintiffs have failed to allege sufficient facts to state a valid Establishment Clause claim, the Court should dismiss this claim.  Fed. R. Civ. P. 12(b)(6).

C. <u>Plaintiffs' Free Exercise Clause claim should also be dismissed because Plaintiffs lack standing to proceed with such a claim and have failed to state a claim upon which relief can be granted</u>.

i. <u>Plaintiffs lack standing to bring a Free Exercise Clause claim</u>.

Plaintiffs also claim that Dr. Estin's hajj lesson at Newton South High School violates the Free Exercise Clause by purportedly coercing students to practice Islam.  <u>See</u> Amended Complaint, ¶ 95.  Unlike the Establishment Clause context, however, where municipal taxpayer standing is available, Plaintiffs must allege that the challenged state practice has burdened *their exercise of their religion* to establish standing to proceed with a Free Exercise claim.  <u>McGowan v. State of Md.</u>, 366 U.S. 420, 429 (1961) (plaintiffs have no standing to challenge Sunday closing rules for liquor stores under Free Exercise Clause when they allege no burden to the practice of their own religion from the same); <u>Fleischfresser v. Directors of Sch. Dist. 200</u>, 15 F.3d 680, 684 (7th Cir. 1994) (finding that plaintiffs only have standing if they can show direct "infringement of their personal religious freedom"); <u>Grove v. Mead Sch. Dist. No. 354</u>, 753 F.2d 1528, 1531 (9th Cir. 1985) ("Appellants have standing to challenge alleged violations of the free exercise clause of the First Amendment only if they claim infringement of their personal religious freedom.").

Plaintiffs plainly fail to meet their burden to demonstrate standing to proceed here when they have not even *alleged* that their own religious practices have been burdened or otherwise impacted by Dr. Estin's hajj lesson, let alone pled any specific facts in support of the same.  Moreover, while the Amended Complaint hypothesizes – without factual support – that *Newton students'* Free Exercise rights are being infringed by this lesson, <u>see</u> Amended Complaint, ¶ 97, Plaintiffs cannot rest a Free Exercise Clause claim on another person's alleged harms.  <u>Valley</u>

Forge Christian College, 454 U.S. at 474.  As such, this claim should be dismissed for lack of standing.

    ii. <u>Nor have Plaintiffs alleged a sufficient Free Exercise Clause claim upon which relief can be granted</u>.

  Even assuming the Court finds standing to proceed, the same defect undermines Plaintiffs' Free Exercise Claim itself.  Plaintiffs have failed to allege a valid Free Exercise Clause claim upon which relief may be granted when they have alleged *no facts* indicating any burden on their ability to exercise their religion due to the challenged practice.  They must do so to plead a proper claim.  <u>Parker v. Hurley</u>, 514 F.3d 87, 103 (1st Cir. 2008) ("Specifically, it is necessary in a free exercise case for one to show *the coercive effect of the enactment as it operates against him in the practice of his religion*.") (emphasis added) (citing <u>Sch. Dist. of Abington Twp., Pa. v. Schempp</u>, 374 U.S. 203, 223 (1963)).  Because Plaintiffs have failed to state a Free Exercise Clause claim upon which relief can be granted, this claim should be dismissed.  Fed. R. Civ. P. 12(b)(6); <u>Parker</u>, 514 F.3d at 107 (affirming dismissal of Plaintiffs' First Amendment claim under Fed. R. Civ. P. 12(b)(6)).

  For all the reasons stated above, this Court should dismiss Count VII in its entirety.[11]

CONCLUSION

  This lawsuit is the latest front in Plaintiffs' years-long efforts to try and censor the Newton Public Schools' curriculum of materials they disagree with.  Plaintiffs clearly have strongly held views on certain materials, and they seek, through this action, to enlist the Court to

---

[11]  Even if the Court declines to dismiss the First Amendment claim (Count VII) under the arguments set forth in Section III, the School Defendants request that Count VII be dismissed with respect to Defendants School Committee, Goldman, Fleishman, Turner, Stembridge, Morrill, Rinaldi, and Bedar because *no facts whatsoever* have been alleged that would support a First Amendment claim against these individuals.

issue an order requiring the School Defendants to remove the materials that Plaintiffs do not like from the curriculum.

This Court should reject Plaintiffs' invitation by dismissing this lawsuit in its entirety. None of Plaintiffs' claims have legal merit.  The mandamus claims should be dismissed because Plaintiffs lack standing to bring such claims, alternative remedies exist, and they have failed to allege any valid claims for mandamus relief.  The First Amendment claim suffers the same defects, and more:  it is improperly alleged, Plaintiffs lack standing, and they have failed to state a plausible claim upon which relief can be granted.

For all the reasons stated above, the School Defendants urge the Court to dismiss the entire Amended Complaint (Counts I – VI), with prejudice.

<u>REQUEST FOR ORAL ARGUMENT</u>

The School Defendants respectfully request that the Court set a hearing on this motion.

        RESPECTFULLY SUBMITTED,

        DEFENDANTS,

        CITY OF NEWTON SCHOOL COMMITTEE, RUTH GOLDMAN, in her official capacity as NEWTON SCHOOL COMMITTEE CHAIRPERSON, DAVID FLEISHMAN in his official capacity as NEWTON SUPERINTENDENT OF SCHOOLS, HENRY TURNER in his official capacity as PRINCIPAL OF NEWTON NORTH HIGH SCHOOL, JOEL STEMBRIDGE in his official capacity as PRINCIPAL OF NEWTON SOUTH HIGH SCHOOL, JONATHAN BASSETT in his official capacity as CHAIR OF THE HISTORY AND SOCIAL SCIENCES DEPARTMENT OF NEWTON NORTH HIGH SCHOOL, JENNIFER MORRILL in her official capacity as CHAIR OF THE HISTORY DEPARTMENT OF NEWTON SOUTH HIGH SCHOOL, DAVID BEDAR in his

Official capacity as HISTORY TEACHER AT NEWTON NORTH HIGH SCHOOL, JAMIE RINALDI in his official capacity as HISTORY TEACHER AT NEWTON SOUTH HIGH SCHOOL, SUSAN WILKINS, in her official capacity as HISTORY TEACHER AT NEWTON NORTH HIGH SCHOOL, and PAUL ESTIN, in his official capacity as HISTORY TEACHER AT NEWTON SOUTH HIGH SCHOOL.

By their attorney,

*/s/ Jennifer C. Pucci*
Jennifer C. Pucci (BBO #669823)
Assistant City Solicitor
City of Newton Law Department
1000 Commonwealth Avenue
Newton Centre, MA 02459
Tel: (617) 796-1240
jpucci@newtonma.gov

DATED:        April 26, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on April 26, 2019.

*/s/ Jennifer C. Pucci*
Jennifer C. Pucci