UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN DECHTER, LEON KADIS, MERRY SMITH, TRAUTE MARSHALL, GEORGE FLESH, and REBECCA KATZ<br><br>                            Plaintiffs<br><br>      v<br><br>CITY OF NEWTON SCHOOL COMMITTEE, RUTH GOLDMAN, in her official capacity as NEWTON SCHOOL COMMITTEE CHAIRPERSON, DAVID FLEISHMAN in his official capacity as NEWTON SUPERINTENDENT OF SCHOOLS, HENRY TURNER in his official capacity as PRINCIPAL OF NEWTON NORTH HIGH SCHOOL, JOEL STEMBRIDGE in his official capacity as PRINCIPAL OF NEWTON SOUTH HIGH SCHOOL, JONATHAN BASSETT in his official capacity as CHAIR OF THE HISTORY AND SOCIAL SCIENCES DEPARTMENT OF NEWTON NORTH HIGH SCHOOL, JENNIFER MORRILL in her official capacity as CHAIR OF THE HISTORY DEPARTMENT OF NEWTON SOUTH HIGH SCHOOL, DAVID BEDAR in his official capacity as HISTORY TEACHER AT NEWTON NORTH HIGH SCHOOL, and JAMIE RINALDI in his official capacity as HISTORY TEACHER AT NEWTON SOUTH HIGH SCHOOL<br><br>                            Defendants | C. A. NO. 19-10736-DJC<br><br><br><br>**PLAINTIFFS' OPPOSITION TO MOTION OF NEWTON TEACHERS ASSOCIATION, INC., NEWTON INTERFAITH CLERGY ASSOCIATION, FAMILIES ORGANIZING FOR RACIAL JUSTICE, MASSACHUSETTS TEACHERS ASSOCIATION, AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC. AND NATIONAL LAWYERS GUILD, MASSACHUSETTS CHAPTER, INC. FOR LEAVE TO FILE AMICUS CURIAE BRIEF** |

## INTRODUCTION

The First Amendment to the U.S. Constitution prohibits public schools from proselytizing students, sponsoring prayer, or otherwise promoting religion. When public school officials engage in these unconstitutional activities, they harm schoolchildren by coercing them into religious practice and subjecting them to unwelcome indoctrination and religious messages; they harm parents by usurping their right to control the religious upbringing of their children; and they harm families and the community as a whole by sending a divisive message of religious favoritism for those who adhere to school officials' preferred faith.

Plaintiffs, in bringing their Establishment Clause claim, agree wholeheartedly with this principled statement of American constitutional law, but neither they nor their attorney drafted its language. Rather, it is the introductory paragraph that the American Civil Liberties Union (ACLU) often uses to lead off its complaints in Establishment Clause lawsuits against public school districts across the country. Now comes ACLU of Massachusetts (ACLU-MA), paying homage to the virtues of "the study of religion" in public schools, and asking the Court to dismiss, "at the earliest possible opportunity," an Establishment Clause lawsuit of the very same nature that it itself routinely files. In their amicus brief and the motion seeking leave to file it, ACLU-MA, along with a group of religious officials and other strangers to this litigation ("Proposed Amici"), oppose the very principles and arguments that ACLU has commendably championed in American courts since the Scopes "Monkey" Trial nearly a century ago.

Proposed Amici are free to abandon their own long-held principles for short-term partisan gain. But Proposed Amici would also have the Court bend its own rules on motions practice and ignore half-a-century-old First Circuit guidance for district courts in its jurisdiction on granting or denying leave to file an amicus brief.

Proposed Amici fail to articulate any special interests that justify their having a say in the litigation. Some, like ACLU-MA and the National Lawyers Guild, Massachusetts Chapter (NLGM), rely only on their lofty names to carry their motion through. Some, like Families Organizing for Racial Justice (FORJ) and Newton Interfaith Clergy Association (NICA), rely only on hollow names, having no actual legal entity status. And some, like the public school teachers' unions, MTA and NTA, claim a constitutional interest in curriculum decisions that their member public school teachers simply do not have in a legally-cognizable sense. Moreover,

generalized constitutional interests have not been sufficient to justify amicus status in the District of Massachusetts.

In the amicus brief submitted with their Motion, Proposed Amici improperly attempt to argue facts, and reprise arguments that are mostly duplicative of Defendants' already voluminous and over-length briefs. The Proposed Amici's motion for leave to file their brief is untimely and also over-length, entered two months after Defendants filed their principal brief in support of their motion to dismiss—and only two weeks before the hearing on that motion is scheduled. This untimeliness and loquaciousness is prejudicial, as it ensures that Plaintiffs will not have sufficient time to review the arguments made by Proposed Amici and address them prior to the hearing.

Plaintiffs are represented by a single attorney working pro bono. Defendants are represented by the Newton City Law Department, with eleven staff attorneys and a yearly departmental budget of nearly two million dollars. Proposed Amici do not—and cannot seriously—claim that Defendants are inadequately represented. Rather, Proposed Amici simply wish to add their own numerous attorney staffs and multimillion dollar litigation funds to Defendants' side of the scales.

Proposed Amici's goal here is not to assist the court. Rather, it is to assist Defendants in making an end run around court-imposed limitations on the lengths of parties' motion memoranda—at the expense of increased litigation costs for Plaintiffs and excessive filings with the Court.

For the reasons stated below, Plaintiffs oppose Proposed Amici's motion for leave to file their amicus brief. If the Court decides to grant the motion, Plaintiffs seek leave to file a reply of

equal length. Plaintiffs also request a postponement of the motion to dismiss hearing for a reasonable period in order to allow Plaintiffs time to review the arguments raised by the amicus brief and draft their reply. Lastly, Plaintiffs request that the Court deny Proposed Amici's motion to participate in oral argument.

## LEGAL STANDARD FOR FILING AMICUS BRIEFS IN DISTRICT COURTS

With a single perfunctory sentence: "The Court has discretion to permit the filing of amicus curiae briefs," Proposed Amici beg the question of whether they are legally entitled to have a say in this litigation as amici curiae. In the cases that they cite, none of the parties opposed the amicus brief at issue in the opinion. Where a party opposes a motion for leave to file an amicus brief, as Plaintiffs do here, the First Circuit urges caution by district courts in granting such a motion. While recognizing, in *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970), "that the acceptance of amicus briefs is within the sound discretion of the [federal district] court, and that by the nature of things an amicus is not normally impartial," the First Circuit cautioned:

> "Nonetheless, we believe a district court lacking joint consent of the parties should go slow in accepting, and even slower in inviting, an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance." *Id.*

The First Circuit further cautioned that, in federal district courts, "an amicus who argues facts should rarely be welcomed. . ." *Id.  See also Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir.), *cert. denied*, 476 U.S. 1141 (1986) ("At the trial level, where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level where such participation has become standard procedure.").

The District of Massachusetts and other districts in the First Circuit have cited the *Strasser* guidance in denying leave to file an amicus brief where the proposed amicus "has not articulated a 'special interest' in the federal constitutional issues raised" by the existing parties. *Massachusetts v. United States HHS*, No. 09-11156-JLT, 2010 U.S. Dist. LEXIS 40118, at *3-5 (D. Mass. 2010); *In re Fin. Oversight & Mgt. Bd.*, 361 F. Supp. 3d 203, 216 n.10 (D.P.R. 2019) (denying motion for leave to file amicus based on the *Strasser* criteria). *See also United States v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991) ("Not only was the [NYCLU] brief not accompanied by the written consent of either party, but the motion for leave to file one fails to state any reason why an amicus brief is desirable beyond stating that several constitutional provisions are implicated by the issues raised by the defendants' motion.").

While no statute or rule defines the Court's power as a federal district court to grant or deny leave to file an amicus brief, Fed. R. App. P. 29 ("App. Rule 29") does set forth standards for filing an amicus brief in the United States Courts of Appeals. In addition to any controlling authority like *Strasser* in circuits where such guidance exists, district courts in all United States circuits have referred to App. Rule 29 for guidance in ruling on a motion seeking leave to file an amicus brief.[1]

---

[1] *See, e.g.*, *Consumer Fin. Protection Bur. v. Ocwen Fin. Corp.*, No. 9:17-CV-80495, 2018 U.S. Dist. LEXIS 116370, at *4 (S.D. Fla. 2018) (denying motion for leave to file amicus brief and referring to App. Rule 29 for guidance); *Center for Biological Diversity v. Jewell*, No. 16-cv-01932-MSK-STV, 2017 U.S. Dist. LEXIS 215881, at *3 (D. Colo. 2017) (denying motion for leave to file amicus brief and referring to App. Rule 29 for guidance); *Portland Pipe Line Corp. v. City of S. Portland*, No. 2:15-cv-00054-JAW, 2017 U.S. Dist. LEXIS 2592, at *16 (D. Me. 2017) ("Although not directly applicable to the trial court, appellate Rule 29(a) supplies, in the Court's view, an excellent analytic framework to evaluate the pending motions [for leave to file amicus briefs]."); *Microsoft Corp. v. United States DOJ*, No. C16-0538JLR, 2016 U.S. Dist. LEXIS 115867, at *27 (W.D. Wash. 2016) (adhering to App. Rule 29 and requiring the American Civil Liberties Union, as amicus, to "file any memorandum commenting on a party's memorandum no later than seven days after the principal brief of the party being supported is filed."); *Monarch Bev. Co. v. Johnson*, No. 1:13-cv-01674-WTL-MJD, 2014 U.S. Dist. LEXIS 171884, at *3 (S.D. Ind. 2014) ("Upon the rare occasion of such desire to participate as amicus curiae on the district court level, courts look to the principles used in implementing Rule 29 of the Federal Rules of Appellate Procedure."); *Giuliani v. Duke Univ.*, No. 1:08CV502, 2010 U.S. Dist. LEXIS 32691, at *11 (M.D.N.C. 2010) (denying motion for leave to file amicus brief and referring to App. Rule 29 for guidance); *Hodge v. United States*, No. 08-CV-4072-DEO, 2009 U.S.

District courts have found certain parts of App. Rule 29 particularly helpful as guidance when ruling on a motion for leave to file an amicus brief at trial court. *See, generally, supra*, n.1.

App. Rule 29(a)(3) requires that the motion state "the movant's interest," "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." According to the notes of the Advisory Committee on App. Rule 29's 1998 amendments ("Advisory Committee"):

> An amicus curiae brief which brings relevant matter to the attention of the Court that has not already been brought to its attention by the parties is of considerable help to the Court. An amicus curiae brief which does not serve this purpose simply burdens the staff and facilities of the Court and its filing is not favored. Fed. R. App. P. 29(a)(3) Adv. Comm. Notes to 1998 Amend.

App. Rule 29(a)(5) requires that the brief be no longer than half the maximum length of party's principal brief. According to the notes of the Advisory Committee:

> [A] shorter page limit for an amicus brief than for a party's brief . . . is appropriate for two reasons. First, an amicus may omit certain items that must be included in a party's brief. Second, an amicus brief is supplemental. It need not address all issues or all facets of a case. It should treat only matter not adequately addressed by a party. Fed. R. App. P. 29(a)(5) Adv. Comm. Notes to 1998 Amend.

Most signif'cantly violated by Proposed Amici, App. Rule 29(a)(6) requires that "[a]n amicus curiae must file its brief . . . no later than 7 days after the principal brief of the party being supported is filed." According to the Advisory Committee:

---

Dist. LEXIS 140856, at *11 (N.D. Iowa 2009) (denying motion for leave to file amicus brief and referring to App. Rule 29 for guidance); *Youming Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008) (adopting App. Rule 29 as "authority" for district court when ruling on motion for leave to file an amicus brief); *Sierra Club v. FEMA*, No. H-07-0608, 2007 U.S. Dist. LEXIS 84230, at *3 (S.D. Tex. 2007) (denying motion for leave to file an amicus brief) ("District courts commonly seek guidance from Federal Rule of Appellate Procedure 29. . ."); *Dow Chem. Co. v. United States*, No. 00-CV-10331-BC, 2002 U.S. Dist. LEXIS 11657, at *3 (E.D. Mich. 2002) (denying motion for leave to file amicus brief and referring to App. Rule 29 for guidance); *United States v. Hunter*, No. 2:97-CR-059, 1998 U.S. Dist. LEXIS 9869, at *1 (D. Vt. June 10, 1998) (citing by analogy to App. Rule 29 in denying American Civil Liberties Foundation of Vermont's motion for leave to file an amicus brief); *Abu-Jamal v. Horn*, No. 99-5089, 2000 U.S. Dist. LEXIS 11013, at *8 (E.D. Pa. 2000) (noting that district courts have required proposed amici to satisfy criteria similar to those in App. Rule 29 and denying American Civil Liberties Union of Pennsylvania's motion for leave to file an amicus brief).

The 7-day stagger was adopted because it is long enough to permit an amicus to review the completed brief of the party being supported and avoid repetitious argument. A 7-day period also is short enough that no adjustment need be made in the opposing party's briefing schedule. The opposing party will have sufficient time to review arguments made by the amicus and address them in the party's responsive pleading. The timetable for filing the parties' briefs is unaffected by this change. Fed. R. App. P. 29(a)(6) Adv. Comm. Notes to 1998 Amend.

In *Strasser*, the First Circuit noted another such equitable consideration that district courts should consider, so as to serve as level playing fields for all parties:

We do think that something is to be said for defendants' complaint that the court should not have invited the filing of an amicus brief [opposing defendants' position] by a member of the bar who is nationally prominent in the civil liberties field. At a minimum, reply poses a burden on the opposite party, who may, in addition, feel that he is outnumbered. . . . [And] here, it appears that [the amicus] side of the case is already well represented. *Strasser*, 432 F.2d at 569.

Indeed, in various circuits, and by various district court judges, motions for leave to file amicus briefs have been denied on the principle that the "partisanship of [a proposed amicus] also weighs against permitting it to participate as amicus curiae." Sierra Club v. FEMA, No. H-07-0608, 2007 U.S. Dist. LEXIS 84230, at *11 (S.D. Tex. 2007) A proposed amicus whose memorandum reads less like a friend of the court and more like a friend of one of the parties, "should not be allowed to file such a memorandum." *Leigh v. Engle*, 535 F. Supp. 418, 422 (N.D. Ill. 1982). "[I]ntervention in this manner *in a trial court* has never been favored in Anglo-American law . . . because it injects an element of unfairness into the proceedings. . ." *Id.* (citing *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)) (emphasis added).

In the trial of accused Gambino Family boss John Gotti, Proposed Amicus ACLU-MA's affiliate in New York ("NYCLU") moved for leave to file an amicus brief in support of Mr. Gotti's pre-trial release. Citing to both App. Rule 29 and the First Circuit opinion in *Strasser*, the Eastern District of New York denied NYCLU's motion with reproach:

Rather than seeking to come as a "friend of the court" and provide the court with an objective, dispassionate, neutral discussion of the issues, it is apparent that the NYCLU has come as an advocate for one side, having only the facts of one side at the time. In doing so, it does the court, itself and fundamental notions of fairness a disservice. *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991).

A related consideration when ruling on a motion for leave to file an amicus brief has been

well-summarized by Judge Posner of the Seventh Circuit:

> [A]micus briefs, often solicited by parties, may be used to make an end run around court-imposed limitations on the length of parties' briefs; the time and other resources required for the preparation and study of, and response to, amicus briefs drive up the cost of litigation; and the filing of an amicus brief is often an attempt to inject interest group politics into the federal appeals process. *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 544 (7th Cir. 2003).

Citing to the App. Rule 29 requirement that an amicus brief be helpful to the court, the

Eastern District of Pennsylvania denied, for similar reasons, leave to file amicus briefs by

Proposed Amicus ACLU's Pennsylvania affiliate and others:

> I find the petitions unhelpful. The burden they impose should not be overlooked. To the extent that amici seek to amplify a claim already presented by petitioner, the burden on the court and parties in terms of additional pages filed and time required to resolve the issues presented likely would outweigh the nominal analytical contribution. . . . My conclusion in this regard is buttressed by the potential for numerous amicus filings in this action. I am aware of the world-wide interest in this case. To permit amicus filings in this matter would present the real possibility of a plethora of filings, each offered by a particular group with a particular interest in this case. I recognize also the possibility that organizations opposed to the petition would seek to file amicus briefs as well. I fear that once trespassed, the slippery slope of permissiveness regarding amicus filings may become inescapable. *Abu-Jamal v. Horn*, CIVIL ACTION NO. 99-5089, 2000 U.S. Dist. LEXIS 11013, at *14-16 (E.D. Pa. Aug. 7, 2000).

## PROPOSED AMICI FAIL TO MEET THE LEGAL STANDARDS FOR FILING AMICUS BRIEFS IN FEDERAL DISTRICT COURT

**I.      Proposed Amici Violate First Circuit Criteria for Filing Amicus Briefs in District Court by Failing to Articulate "Special Interest," by Arguing Facts, and by Failing to Show that Defendants' Counsel Needs Supplemental Assistance**

Proposed Amici's motion for leave to file their amicus briefs contains this generalized statement of special interest in this litigation:

> The [Proposed] Amici are non-profit organizations, all of which have a significant interest in education, in free speech, in free expression, in combatting unjustified censorship, and in preserving academic freedom. . . .The Amici seek leave to address significant First Amendment issues raised in Plaintiffs' Complaint and by Plaintiffs' requested relief.

As a group, Proposed Amici have failed to state a special interest that justifies them having a say in this litigation over the opposition of one of the actual parties. *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970). They simply "stat[e] that several constitutional provisions are implicated by the issues raised by [Plaintiffs' opposition]," *Gotti*, 755 F. Supp. at 1158, and do not bother with "articulat[ing] a 'special interest' in the federal constitutional issues raised," *Massachusetts v. United States HHS*, 2010 U.S. Dist. LEXIS 40118, at *3-5 (D. Mass. 2010).

Two Proposed Amici, NICA and FORJ, have neither the special interest nor the business to have a say in this litigation. They are not, as their motion says, "non-profit organizations," nor any other type of legally-cognizable entity. Neither group is registered as a corporation to do business in Massachusetts. They are simply groups of individuals who have picked group names for themselves but who have not bothered to acquire the corporate status that would allow them the use of these names in court.

The two teacher union Proposed Amici do articulate a 'special interest' in this litigation, but they are neither legally-cognizable, nor even legitimate. As they state in their motion: "Both the MTA and the NTA have a vital interest in ensuring that professional educators can develop and implement district-approved curricula without fear of being targeted by aggrieved parents or students who disapprove of the curricular content." Moreover, Proposed Amici want their

members to teach "without the constitutional burden of having to shield every student from ideas which individual students, parents or (as in this case) citizens might perceive as controversial."

The MTA and the NTA might certainly have a fraternal interest in protecting those among their members who are "targeted by aggrieved parents or students" in any lawsuits alleging injury under any of a number of legal theories. But Massachusetts and the United States have laws, some of which provide private rights of actions to aggrieved parents, students, and other persons to sue teachers under the proper circumstances—even teachers who are members of the MTA and the NTA. In particular, here, Defendants are being sued under the Massachusetts Student Anti-Discrimination Act, M.G.L. c. 76, § 5, and regulations promulgated by the Massachusetts Department of Elementary and Secondary Education under that Act's authority. 603 Code Mass. Regs. 26.05, 26.09. These regulations affirm "the right of a parent, guardian, or person affected to seek enforcement of M.G.L. c. 76, § 5 in any court or administrative agency of competent jurisdiction." 603 Code Mass. Regs. 26.05. Whether their curricula are approved by their district is irrelevant. If Defendants' curricula fail to "encourage respect for the human and civil rights of all individuals regardless of race, color, sex, gender identity, religion, national origin or sexual orientation," or if Defendant teachers fail to "review all instructional and educational materials for simplistic and demeaning generalizations. . . ," then aggrieved Plaintiffs "who disapprove of the curricular content," have the right to sue Defendants. 603 Code Mass. Regs. 26.05, 26.09.

The teacher union Proposed Amici stray even further from the law when they assert a legally-cognizable special interest in freeing their members from "the constitutional burden of having to shield every student from ideas which individual students, parents or (as in this case) citizens might perceive as controversial." If individual students, parents, and even citizens, as

Plaintiffs do here, perceive some ideas as controversial because teaching them has no secular purpose, because teaching these ideas tends to advance or inhibit religion, or because teaching these ideas creates excessive government entanglement with religion, teachers absolutely have a constitutional burden to shield every student from these ideas within the secular clean-room that is the public school classroom.[2] *See Edwards v. Aguillard, 482 U.S. 578, 591 (1987); Stone v. Graham, 449 U.S. 39, 39, 41-42 (1980); Lemon* v. *Kurtzman*, 403 U.S. 602, 612-13, 622 (1971); *Epperson v. Arkansas, 393 U.S. 97, 106 (1968)*. Individual students, parents, and even citizens may sue such teachers for failing to carry this constitutional burden, even teachers who are members of MTA and NTA. The teacher union Proposed Amici do not have any 'special interest' independent of their Defendant members. They would better serve Defendants' interests by helping Defendants' attorneys represent their Defendant members directly, and making their arguments fairly within the confines of properly-filed Defendant Party briefs.

There is no First Amendment right, under the concept of academic freedom, to teach or learn a discriminatory or proselytizing curriculum, *See, e.g.*, *Villanueva v. Wellesley College*, 930 F.2d 124, 129 (1st Cir. 1991) ("Academic freedom does not embrace the freedom to discriminate."). Beyond claiming an interest in this non-existent First Amendment right, Proposed Amici ACLU-MA and NLGM do not articulate any special interest that justifies having their say in this litigation, seemingly relying on their lofty names and histories in lieu of the *Strasser* requirement to have such an interest. But the "fact that powerful public officials or business or labor organizations support or oppose an appeal is a datum that is irrelevant to

---

[2] In the First Amended Complaint, Plaintiffs provided an example of the ideas taught to students by Defendants in an assignment of "quotes from the Qur'an that students are asked to put into their own words." These quotes include passages like: "IN THE NAME OF GOD THE COMPASSIONATE THE MERCIFUL Praise be to God, Lord of the Creation, The Compassionate The Merciful King of the Late Judgement! You alone we worship, and to You alone we pray for help, Guide us to the straight path, The path of these whom You have favored, Not of these who have incurred Your wrath, Nor of those who have gone astray."

judicial decision making. . ." *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) *See also Johnson v. United States OPM*, No. 14-C-0009, 2014 U.S. Dist. LEXIS 60404, at *3 (E.D. Wis. 2014) ("[T]he persuasive force of [an amicus] brief is entirely unrelated to the number of amici, their official positions, or the influence they may wield.").

The presence of ACLU-MA and NGLM as amici, moreover, is likely to tremendously confuse the constitutional issues before the Court. Both organizations, throughout their storied histories, have represented their special interests in the Establishment Clause as being aligned against "the study of religion" in public schools, not for it, as they now claim. It is quite plausible that every single argument made by Proposed Amici against Plaintiffs' cause of action under the Establishment Clause can be, in turn, rebutted by the verbatim language of some argument in some pleading, motion, or filing made by an affiliate of ACLU-MA or NLGM over the national groups' illustrious histories.

Dedicating an entire titled section of their proposed amicus brief to "Relevant Factual Allegations Regarding The Curriculum," Proposed Amici spend six pages tendentiously arguing the facts as alleged by Plaintiffs in the First Amendment Complaint and elaborated upon in Plaintiffs' Opposition to Defendants' Motion to Dismiss. "[A]n amicus who argues facts should rarely be welcomed" by a district court. . ." *Strasser*, 432 F.2d at 569.

Proposed Amici do not—and cannot—suggest that Defendants' legal counsel is inadequate. Proposed Amici do not identify Defendants are represented by the eleven attorneys of the Newton City Law Department and a $1,823,813 budget for 2019, while Plaintiffs are represented by one attorney, pro bono. This part of the guidance in *Strasser*, 432 F.2d at 569, is also unsatisfied by Proposed Amici.

II.     **Proposed Amici Violate Fed. R. App. P. 29, As Used By District Courts For Guidance In Ruling on Motions Seeking Leave to File an Amicus Brief.**

App. Rule 29(a)(5) requires that the brief be no longer than half the maximum length of party's principal brief, e.g. ten pages, yet the proposed amicus brief is more than double this limit at twenty-two. App. Rule 29(a)(6) requires that "[a]n amicus curiae must file its brief . . . no later than 7 days after the principal brief of the party being supported is filed," yet the proposed amicus brief was filed exactly two months after Defendants filed their Motion to Dismiss on April 26, 2019, more than eight times later than the limit of seven days. As the Advisory Committee to App. Rule 29's 1998 amendments noted, these requirements are very much intentional. An amicus brief should be half the length of a party brief because "it should treat only matter not adequately addressed by a party." Fed. R. App. P. 29(a)(5) Adv. Comm. Notes to 1998 Amend. An amicus brief must be filed within seven days of the principal brief it supports because "[t]he opposing party [should] have sufficient time to review arguments made by the amicus and address them in the party's responsive pleading," and the amicus should not affect "[t]he timetable for filing the parties' briefs." Fed. R. App. P. 29(a)(6) Adv. Comm. Notes to 1998 Amend.

Proposed Amici seek leave to file a twenty-two-page brief, filling it with Defendants' arguments about facts, repetitive recitations of the Lemon Test, and other arguments already addressed by Parties. There are only so many times that Defendants and Proposed Amici can restate the Lemon Test before the restatements stop being useful to the Court, especially when they happen to be inaccurate. And with the hearing on Defendants' Motion to Dismiss just days away, Plaintiffs have not had sufficient time to review the arguments in the proposed amicus brief, much less to address these arguments in time for the hearing. "Because the concerns of necessity and timeliness, which undergird Rule 29, do not appear to be any less important in the

district court than in the court of appeals," the Court should look to the standards established by Rule 29 in support of a decision to deny Proposed Amici's motion. United States ex rel. Gudur v. Deloitte Consulting Llp, 512 F. Supp. 2d 920, 928-929 (S.D. Tex. 2007).

Proposed Amici also violate App. Rule 29(a)(3) by failing to demonstrate that their participation in this litigation as amici curiae would be desirable. They do this by clearly demonstrating that they have come before this Court, not as its friends, but rather as friends of Defendants, to "advocate for one side." *Gotti*, 755 F. Supp. at 1159. Proposed Amici's demand that the Court dismiss Plaintiffs' Complaint "at the earliest possible opportunity," is simply incompatible with the "objective, dispassionate, neutral discussion of the issues" that characterizes a "desirable" amicus brief. *Id.*

It is, indeed, clear what Proposed Amici and Defendants are really up to. Defendants have asked for (and received with consent from Plaintiffs) leave to file a thirty-six-page brief in support of their Motion to Dismiss, at almost double the twenty-page limit set by this District for motions practice memoranda in Local Rule 7.1(b)(4). Plaintiffs have been disciplined in keeping their Opposition to the twenty-page limit. Not satisfied with their sixteen-page advantage, Defendants have now moved for leave to file a twelve-page reply to Plaintiffs' Opposition. The twenty-two-page proposed amicus brief in opposition to Plaintiffs' Opposition is part and parcel of this obvious attempt to "make an end run around court-imposed limitations on the length of parties' briefs," making "the time and other resources required for the preparation and study of, and response to" all these voluminous and repetitive arguments prohibitive for Plaintiffs. It is no secret that Plaintiffs "feel that [they are] outnumbered." *Strasser*, 432 F.2d at 569. That is Defendants' and Proposed Amici's precise goal.

As a result, granting Proposed Amici's motion for leave to file their amicus brief would set this Court on the "inescapable . . . slippery slope of permissiveness regarding amicus filings. . ." *Abu-Jamal*, 2000 U.S. Dist. LEXIS 11013, at *14-16. There are many organizations on both sides of the "interest group politics" that Proposed Amici are "attempting to inject" into the federal judicial process in the instant case. *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 544 (7th Cir. 2003). Organizations whose politics would favor victory by Plaintiffs, as Plaintiffs have been made aware, would be interested in filing their own amicus briefs too. "The delay occasioned by substantial additional filings will work to the detriment of [the Parties], and the just and speedy administration of this action by the court." Abu-Jamal, 2000 U.S. Dist. LEXIS 11013, at *16.

## **CONCLUSION**

For all the reasons stated above, Plaintiffs oppose Proposed Amici's motion for leave to file their amicus brief. If the Court decides to grant the motion, Plaintiffs seek leave to file a reply of equal length. If the Court decides to grant the motion, Plaintiffs also request a postponement of the motion to dismiss hearing for a reasonable period in order to allow Plaintiffs time to review the arguments raised by the amicus brief and draft their reply. Lastly, if the Court decides to grant the motion, Plaintiffs request that the Court deny Proposed Amici's motion to participate in oral argument.

REQUEST FOR ORAL ARGUMENT

Plaintiffs
By their attorney,

*Karen Hurvitz*

Karen D. Hurvitz, BBO#245720
Law Offices of Karen D. Hurvitz
34 Tanglewood Drive
Concord MA 01742
HurvitzLaw@comcast.net
(617) 513-3365

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 5th 2019.

*Karen Hurvitz*