UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN DECHTER et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. 19-10736-DJC |
| v. | ) |
| | ) **LEAVE TO FILE GRANTED** |
| | ) **JULY 8, 2019** |
| CITY OF NEWTON SCHOOL COMMITTEE et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AMICUS BRIEF OF NEWTON TEACHERS ASSOCIATION, INC., NEWTON INTERFAITH CLERGY ASSOCIATION, FAMILIES ORGANIZING FOR RACIAL JUSTICE, MASSACHUSETTS TEACHERS ASSOCIATION, AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC. AND NATIONAL LAWYERS GUILD, MASSACHUSETTS CHAPTER, INC.

NEWTON TEACHERS ASSOCIATION, INC., NEWTON INTERFAITH CLERGY ASSOCIATION, FAMILIES ORGANIZING FOR RACIAL JUSTICE, MASSACHUSETTS TEACHERS ASSOCIATION, AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC. AND NATIONAL LAWYERS GUILD, MASSACHUSETTS CHAPTER, INC.,

By their attorneys,

Howard M. Cooper (BBO# 543842)
hcooper@toddweld.com
Maria T. Davis (BBO# 675447)
mdavis@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

**Introduction**

Plaintiffs have filed a lawsuit against the City of Newton School Committee, individual committee members, and Newton High School teachers in an attempt to censor selected portions of an established curriculum which conflict with their own personal viewpoints.  Plaintiffs' efforts here evoke similar unfortunate efforts in our history such as the attempted suppression, through litigation, of public education about evolution, reproductive health, and LGBTQ rights. Plaintiffs' lawsuit is without merit. The First Amended Complaint (the "Complaint") should be dismissed at the earliest possible opportunity pursuant to Rule 12(b)(6) for failure to state a legally cognizable claim.

As recited in the Complaint, the purpose of the Massachusetts Education Reform Act of 1993 ("MERA") is "to provide a public education system of sufficient quality to extend to all children . . . the opportunity to reach their full potential and to lead lives as participants in the political and social life of the commonwealth and as contributors to its economy."  G.L. c. 69, § 1.  In order to prepare students to achieve this statutory purpose, the law affords school committees and teachers, properly, wide discretion in creating and teaching an educational curriculum that provides students with the knowledge they need to understand the world around them, to begin thinking critically for themselves, and to learn to work with others whose opinions and beliefs may differ from their own.  Censorship is antithetical to such a goal and Plaintiffs' allegations here provide no basis to interfere with Defendants' chosen curriculum.

When the Court actually parses Plaintiffs' voluminous and highly misleading allegations, it is clear that the Complaint fails to state a claim which can survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6). First, as a threshold pleading matter, Plaintiffs improperly rely upon conclusory allegations that materially misrepresent even the incomplete and improperly cherry-

picked portions of curriculum documents Plaintiffs attach as exhibits to the Complaint.  Without these conclusory statements, Plaintiffs fail to allege any plausible violation of the First Amendment entitling them to any form of relief.  Further, for the reasons articulated by the Defendants but not repeated here, Plaintiffs lack standing and *mandamus* is not an available remedy in this situation.  In addition to these deficiencies, as a matter of law, Plaintiffs fail to allege facts sufficient to support an Establishment Clause claim under <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971) (setting forth the "<u>Lemon</u> Test")  and its' progeny. Likewise, Plaintiffs fail to allege any legally cognizable claim that the selected portions of the curriculum alleged to be at issue somehow burden or promote religion in violation of the Free Exercise Clause.  Plaintiffs' lawsuit therefore is without merit and should be dismissed.

## Interests of Amici Curiae

Newton Teachers Association, Inc., Newton Interfaith Clergy Association, Families Organizing for Racial Justice, Massachusetts Teachers Association, American Civil Liberties Union of Massachusetts, Inc. and National Lawyers Guild, Massachusetts Chapter, Inc. (collectively, the "Amici") are non-profit organizations.  As part of their missions the Amici have a significant interest in education, in free speech, in free expression, in combatting unjustified censorship, and in preserving academic freedom.

The Amici have an interest in this case because Plaintiffs seek to improperly rely on First Amendment principles to convince the Court to censor the curriculum taught to students in Newton in a manner that would undermine student access to information and academic freedom. If allowed to prevail, Plaintiffs' claims would imperil First Amendment interests of the most significant nature and would result in a severe chilling of academic freedom, as school districts and individuals – including the very individuals who teach students in the Commonwealth –

would be required to eradicate any potentially controversial materials from the curriculum (in violation of their obligations under state law and the Constitution) in an effort to protect themselves from potential liability.  Needless to say, this would have a significant and detrimental impact on students throughout the Commonwealth.

<u>**Relevant Factual Allegations Regarding The Curriculum**</u>

The standard here is familiar to the Court – the well-pled allegations of the Complaint, and reasonable inferences therefrom, must be assumed true for purposes of the pending motion. The following is a summary of Plaintiffs' allegations, including in the context of the documents attached to the Complaint presumably to support them.

**I.**      <u>**Plaintiffs' Cherry-Picked Portions of the Curriculum**</u>

Plaintiffs are a number of individuals living in Newton.  Complaint ¶4.  There is no allegation in the Complaint that any of the Plaintiffs are parents of students in the Newton Public School system.  <u>See</u> Complaint, generally.  Plaintiffs assert that the high school curriculum offered by Newton Public Schools ("NPS") promotes Islam and contains materials that are anti-Semitic and anti-Israel and that, as a result, Defendants should be required to re-review their curriculum and remove the materials Plaintiffs contend are offensive.  <u>See</u> <u>id</u>., pp. 1-2.

In particular, Plaintiffs allege that various people and organizations in Newton have raised concerns about the curriculum used by teachers at NPS that, they allege, contain simplistic and demeaning generalizations regarding Israel and Judaism.  <u>See</u> <u>id</u>., ¶79.  Plaintiffs allege that through public records requests certain groups have obtained portions of the NPS teaching curriculum, specifically, those portions relating to the teaching of historical Islam and the Arab-Israeli Conflict.  <u>See</u> <u>id</u>., ¶¶80-82.

### A. **Historic Islam**

Plaintiffs set forth a number of contentions regarding the curriculum with respect to the teaching of Historic Islam.  These allegations fall essentially into the following categories:

(1)     That materials offered regarding Islam are presented as fact, rather than qualified as a theological belief (see, e.g., id., ¶¶84-85);

(2)     That the materials presented as fact rather than qualified as a theological belief are incorrect (see, e.g., id., ¶¶85-86);

(3)     That students are asked to analyze why Historic Islam held certain views and took certain positions (see, e.g., id., ¶¶64-65); and

(4)     That students are asked to analyze the meaning of certain Islamic beliefs and teachings (see, e.g., id., ¶¶67, 95-101).

In particular, the Complaint alleges that ninth grade students at Newton North High School are required to read an excerpt from what is described as a "college-level textbook in Islam" entitled *Islam: The Straight Path*.  See id., ¶84.  The Complaint alleges that although the textbook is presented as objective, it disparages Christian and Jewish religions and, moreover, that the beliefs are not qualified as theological belief, but instead, are presented as fact.  See id., ¶¶84-86.  Plaintiffs attach an excerpt from the textbook as Exhibit B to the Complaint.

Despite Plaintiffs' allegation that the religious views presented by the textbook are offered as fact, however, the actual excerpt repeatedly *qualifies the statements in the textbook as religious beliefs*.  For example, the following qualifiers are included in the approximately five-page excerpt Plaintiffs include in their Exhibit B: "*For Muslims*, the Quran is the Book of God[]"; "*Islam teaches* that[]"; "*Muslims believe* that[]"; "*The Quran teaches* that[]"; "Since *Muslims believe*[]"; "*Muslim tradition* is replete with stories[]"; "*Muslim tradition* also holds that[]"; "*In Islam*[]"; "However, *many Muslims believe* that[]".  (Emphasis supplied).

The Complaint also contends that the alleged "facts" in the textbook are not accurate, see id., ¶¶87-88, and that students are improperly required to complete assignments asking them to

analyze the significance of what Plaintiffs claim is factually incorrect information.  See id., ¶89.

Such assignments allegedly are based upon information set forth in *Islam: The Straight Path*,

explaining the relationship between the Quran, the Torah and the Bible and evaluating the

significance of why the Quran is not typically translated out of Arabic.  See id.

The Complaint alleges that a teacher at Newton South High School violated the First

Amendment by requiring ninth grade students to participate in a "Historical Hajj Project."  See

id., ¶95.  During this project, the Complaint alleges, students are required to create banners

displaying religious statements, such as those that would have been used during the Hajj circa

1000 C.E.  See id., ¶97.  Students are also required to learn about praying, but, the Complaint

concedes, are not asked to pray.  See id., ¶98.  Instead, the Complaint alleges that students are

required to analyze and understand various Islamic prayers.  See id., ¶¶99-101.

Plaintiffs attach the written Historical Hajj Project assignment to the Complaint as

Exhibit DDD.  That exhibit, in actuality, reflects that students were required to make a

presentation concerning the historical Hajj, in or around 1000 and 1500 CE, from certain

historical locations.  See Complaint, Exhibit DDD.  As part of their presentation, students were

required to present on the city assigned to them; share a brief tale relating to the fictional hajj;

create a city banner depicting a religious phrase that would have been displayed on such a

banner; read and analyze a verse from the Quran; and memorize, recite and explain three

proverbs.  See id.

### B.  The Arab-Israeli Conflict

Plaintiffs make allegations concerning the teaching of the Arab-Israeli Conflict.  These

allegations fall into the following categories:

(1)     The use of maps that they allege wrongly depict the borders of Israel and
        Palestine (see, e.g., id., ¶¶102-06);

5

(2)     Course work requiring students to analyze a one-state versus two-state solution (<u>see, e.g.</u>, <u>id.</u>, ¶¶113-15); and

(3)     Allowing students to put on a Middle East Day program offering pro-Palestinian viewpoints (<u>see, e.g.</u>, <u>id.</u>, ¶¶90-92, 130-31, 134-38).

More specifically, Plaintiffs claim that the curriculum includes a series of four maps to teach about the Arab-Israeli conflict which, they allege, falsely represents Israel progressively appropriating 88% of the territory of 'Historic Palestine.'" <u>See id.</u>, ¶¶102-06.

Plaintiffs also allege that an elective program taught to senior students at Newton North High School, entitled Middle East, Asia and Latin America ("MEALA"), fails to accurately convey the history of the Arab-Israeli conflict and "favors the Palestinian narrative over the Zionist account[]." <u>See id.</u>, ¶¶110.  As a result, Plaintiffs allege, "the MEALA course consists of simplistic and demeaning generalizations based on Israeli national origin and Jewish religion." <u>See id.</u>, ¶111.  Further, Plaintiffs allege that students are required to complete improper assignments in the class.  For example, students allegedly are asked to debate the pros and cons of the one or two-state solutions to the conflict and to take a position regarding which solution, in their opinion,  should be implemented.  <u>See id.</u>, ¶¶113-15.  Plaintiffs have alleged that the one-state solution is not feasible, therefore MEALA's inclusion of material relating to a one-state solution amounts to anti-Semitism.  <u>See id.</u>, ¶¶116-18.  The Complaint also alleges that teaching materials concerning Zionism are incorrect and therefore amount to an unbalanced presentation and demeaning generalizations.  <u>See id.</u>, ¶¶120-21.

Plaintiffs further allege that Newton North High School's allowance of a student-created and run program entitled "Middle East Day" is improper.  <u>See id.</u>, ¶123.  Specifically, in April 2017, a named teacher Defendant was approached by students in the MEALA class, who advised the teacher that they had gained valuable knowledge regarding the Arab-Israeli conflict in the MEALA class and requested that they be allowed to put on an educational program to share this

knowledge with other students.  See id.  The students selected speakers for the program.  See id., ¶¶90-92.  Plaintiffs allege that two of the speakers, including Amahl Bishara, were anti-Israeli extremists.  See id., ¶¶123-25.  Plaintiffs concede that Ms. Bishara is a current professor at Tufts University.  See id., ¶126.  Plaintiffs do not name the other individual they label an extremist or indicate why they believe that speaker was an extremist.  See Complaint, generally.

Plaintiffs allege that during Middle East Day, speakers made "radical" statements and that students were not presented with an opportunity to challenge the statements.  See id., ¶128. In support of their contention that students were not provided an opportunity to challenge Professor Bishara's statements, Plaintiffs cite an email sent to Professor Bishara prior to her presentation in which the teacher wrote "I have faith that by now our students know how to respect others [sic] options/views/perspectives," and that, in lieu of an open mic for questions, students would be asked to write down questions on notecards.  See id., ¶129.  The Complaint alleges that, in contrast, students protested speakers from the American Israel Public Affairs Committee, and that these protests "can only be characterized as intentional" conduct intended to preclude the pro-Israel viewpoint.  See id., ¶¶130-31.

The Complaint alleges that a Middle East Day was also held in 2018, during which a representative of the Boston Palestine Film Festival presented to students.  See id., ¶132. According to the Complaint, the presenter has written in favor of a one-state solution and his website sets forth anti-Semitic viewpoints.  See id., ¶133.  During his 2018 Middle East Day presentation, the presenter allegedly showed a fictional film and trailers for two other films relating to the Arab-Israeli conflict that, Plaintiffs allege, took a pro-Palestinian view of the conflict and depicted Israelis negatively.  See id., ¶¶134-37.  Plaintiffs allege that no pro-Israel viewpoint was provided to counteract the pro-Palestinian view.  See id., ¶138.

## II.   **Required Massachusetts Curriculum**

The Massachusetts Department of Elementary and Secondary Education, in a publicly available document, provides a curriculum framework setting forth what must be included in a school's curriculum.  Excerpts from the 2018 History and Social Science Framework (the "Curriculum Framework") are attached as **Exhibit 1**.[1]  The Curriculum Framework states that as a general, overarching theme, the curriculum is intended to allow students to organize information and data from multiple primary and secondary sources and to evaluate the credibility, accuracy, and relevance of each source.  See Exhibit 1, p. 23.  Further, the Curriculum Framework states that it is an overriding goal of the curriculum to ensure that students "[a]nalyze the purpose and point of view of each source; distinguish opinion from fact."  See id., p. 24.  To that end, the Curriculum Framework specifies that "[s]tudents need exposure to readings that represent a variety of points of view in order to become discerning and critical readers[]," and that "[t]hey need to be able to identify the purpose of a document and the point of view of its author."  Id.

The Curriculum Framework also includes guidance specific to various grade levels and subjects.  In terms of World History I requirements, the Curriculum Framework requires Massachusetts schools to teach, among other things "the central tenets of Hinduism, Judaism, Buddhism, Confucianism, Christianity, and Islam;" and to "create a timeline that shows when and where each religion or belief system began."  Id., p. 141.  In World History II, teachers are expected to include the following:

---

[1] The First Circuit has recognized exceptions to the general requirement that a court is confined to the four corners of a complaint in deciding a motion to dismiss "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).  The Curriculum Framework is a public document and thus the Court may take judicial notice of the Curriculum Framework.  See, e.g., Parker v. Hurley, 514 F.3d 87, 91 (1st Cir. 2008) (in which the First Circuit took judicial notice of the Curriculum Framework).  The Amici have included an excerpt rather than the entire Curriculum Framework due to the length of the Curriculum Framework, but will supply the entire document at the Court's request.

Explain the background for the establishment of the modern state of Israel in 1948, and subsequent military and political conflicts.

   a.   the growth of Zionism, and 19th and early 20th century immigration by Eastern European Jews to Palestine
   b.   anti-Semitism and the Holocaust
   c.   the United Nations (UN) vote in 1947 to partition the western part of the Palestine Mandate into two independent countries
   d.   Palestinian loss of land and the creation of refugees by Israeli military action
   e.   the rejection of surrounding Arab countries of the UN decision and the invasion of Israel by Arab countries
   f.   the various wars between Israel and neighboring Arab states since 1947, (e.g., the Six Day War and the Yom Kippur War)
   g.   the diverse mix of cultures (e.g., Jews, Palestinians, and Arabs of Christian, Jewish, Muslim, and Druze backgrounds) in the region in the late 20th and early 21st centuries
   h.   attempts to secure peace between Palestinians and Israelis, including the proposal of a two-state solution[.]

Curriculum Framework, p. 158.  Plaintiffs do not include in their Complaint any information regarding portions of the curriculum taught in NPS other than the excerpts they allege violate their rights as tax payers.

## Argument

### I.   Plaintiffs' Complaint Fails to Set Forth a Plausible Claim.

Plaintiffs' claims are based upon conclusory allegations which are insufficient to establish a plausible First Amendment claim.  Under federal law, a complaint will be dismissed unless factual allegations in the complaint are "enough to raise a right to relief above the speculative level[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although factual allegations in the complaint must be taken as true, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

As discussed below, Plaintiffs' First Amendment claims are without merit. As a preliminary matter, the Complaint pleads those claims, improperly, in a conclusory manner and fails to lay out facts based upon which any plausible claim exists. See id., at 678. By way of example, the Complaint alleges in conclusory fashion that the subject curriculum presents Islam as the truth as opposed to teaching Historic Islam and its beliefs. See Complaint, ¶¶85-86 . Yet, when the Court examines the actual text of the curriculum, attached as Exhibit B to the Complaint, it is clear that this conclusion is unsupported with actual facts and is in fact untrue. See Complaint, Exhibit B. Similarly, although Plaintiffs allege that students were not offered any opportunity to challenge Professor Bishara's statements, see id. at ¶128, Paragraph 129 and Exhibit O reflect that students were in fact provided an opportunity to write down questions. See id., ¶129; Exhibit O. Likewise, although the Complaint alleges that student-protests against the American Israel Public Affairs Committee resulted from Defendants' intentional discrimination, see id., ¶¶130-31, there are no facts in the Complaint that supports this sweeping allegation.

The Court should ignore Plaintiffs' conclusory allegations and labels and instead review only the actual facts pled in the Complaint in the context of the actual content of the curriculum materials provided and the Curriculum Framework. Once the Court undertakes this exercise, it is clear the First Amendment claims do not survive a motion to dismiss.

II.     **The Supreme Court has Long Recognized the Role of Public Education as Essential to a Democratic and Pluralistic Society Tolerant of Differing Viewpoints, Including Religious and Political Viewpoints.**

The United States Supreme Court has long recognized that public education plays a critical role in preparing students with the knowledge necessary to participate effectively as citizens of their diverse communities. Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 681 (1986) (noting that public schools must help "prepare pupils for citizenship" and "inculcat[e]

fundamental values necessary to the maintenance of a democratic political system including those "habits and manners of civility" essential to a democratic society such as "tolerance of divergent political and religious views, even when the views expressed may be unpopular"); see also Board of Educ. Island Trees Union Free School Dist. No. 26 v. Pico, 457 U.S. 853, 865 (1982) ("We have also acknowledged that public schools are vitally important 'in the preparation of individuals for participation as citizens.'").  As part of this, the Supreme Court has explicitly recognized that "it might well be said that one's education is not complete without a study of comparative religion or the history of religion and its relationship to the advancement of civilization."  Id.; see also Stone v. Graham, 449 U.S. 39, 42 (1980) (noting that a religious text may be used in the study of, for example, history, civilization, ethics and comparative religion consistent with the First Amendment).  Accordingly, courts have repeatedly held that the Constitution generally permits public schools to teach students about religion where the religious material is "presented objectively as part of a secular program of education[.]"  Sch. Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 225 (1963).

Despite the Supreme Court's clear and repeated directive that school districts may include the study of religion in their curriculum, Plaintiffs have asserted that the curriculum taught in Newton violates the First Amendment under both the Establishment Clause and the Free Exercise Clause.  See Complaint, ¶¶51-72.

### A.   Plaintiffs' Establishment Clause Claim Fails as a Matter of Law.

Plaintiffs allege in their Complaint that Defendants' inclusion of materials relating to Islam in the religious studies and history curriculum amounts to a violation of the Establishment Clause.  This claim ignores well-established law.

The Establishment Clause prohibits Congress from making any law respecting the establishment of religion.  The purpose of the Establishment Clause (as well as the Free Exercise Clause), is to "to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other."  Lynch v. Donnelly, 465 U.S. 668, 672 (1984) (citing Lemon v. Kurtzman, 403 U.S. 602, 614 (1971)).  The Supreme Court has also recognized, however, that it is not possible to have absolute separation, and that "[s]ome relationship between government and religious organizations is inevitable."  Lynch, 465 U.S. at 672 (citing Lemon, 403 U.S. at 614).  In assessing whether the use of (or in this case teaching of) religious material in a public setting violates the Establishment Clause, a court "must reconcile the inescapable tension between the objective of preventing unnecessary intrusion of either the church or the state upon the other, and the reality that, as the Court has so often noted, total separation of the two is not possible."  Lynch, 465 U.S. at 672.

Courts do so by applying the Lemon Test.[2]  Under the Lemon Test, the Supreme Court held that a public practice does not violate the Establishment Clause where it meets three elements:  "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . finally, the statute must not foster an excessive government entanglement with religion."  Lemon, 403 U.S. at 612-13.

To meet the first prong of this test, "the government's purpose need not be "exclusively secular."  Brown v. Gilmore, 258 F.3d 265, 276 (4th Cir. 2001) (citations omitted).  On the

---

[2] It is worth noting that in the context of determining whether placement of monuments violates the Establishment Clause, which is not the issue here, a plurality of the Supreme Court has indicated that the Lemon Test is not determinative.  Van Orden v. Perry, 545 U.S. 677 (2005).  Just last week, a plurality of the Supreme Court held that the Lemon Test will no longer be applied in Establishment Clause cases that involve historic monuments, symbols and practices and instead, stated that such cases should be analyzed based on their history and tradition.  See Am. Legion v. Am. Humanist Ass'n, No. 17-1717, 2019 WL 2527471, at *18-19 (U.S. June 20, 2019).  Although the Lemon Test is no longer applicable to historic monument cases, the Supreme Court has not suggested that it is no longer the law in curriculum cases such as the matter presented here and, indeed, the Lemon Test remains a logical and appropriate framework for analyzing this type of case.

contrary, the first prong of the <u>Lemon</u> Test is only violated "[w]hen the government acts with the ostensible and predominant purpose of advancing religion." <u>McCreary County v. ACLU</u>, 545 U.S. 844, 860 (2005). To meet the second prong of the test, a court must "measure whether the principal effect of government action is to suggest government preference for a particular religious view or for religion in general." <u>Wood v. Arnold</u>, 915 F.3d 308, 316 (4th Cir. 2019) (quoting <u>Mellen v. Bunting</u>, 327 F.3d 355, 374 (4th Cir. 2003)). In analyzing the third prong of the test, "excessive entanglement," a court will analyze whether the action has "the effect of advancing religion through indoctrination." <u>Agostini v. Felton</u>, 521 U.S. 203, 205 (1997).

The <u>Lemon</u> Test is an objective test, and an individual's subjective belief that a public entity's actions are hostile toward her religion is not sufficient to establish an Establishment Clause violation. <u>See</u> <u>Brown v. Woodland Joint Unified School Dist.</u>, 27 F.3d 1373, 1383 (9th Cir. 1994). In applying the <u>Lemon</u> Test, challenged materials must be analyzed in light of the larger context in which the materials are used. <u>See</u> <u>Lynch</u>, 465 U.S. at 679-80 ("focus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause."). In the context of a school curriculum, the determination of whether challenged materials hold a secular purpose can only be made by considering the academic framework in which those materials are presented. <u>See</u> <u>McCreary County v. ACLU</u>, 545 U.S. 844, 862 (2005). Where, as here, the materials are part of a world history curriculum designed to expose students to multiple religions and their history, the materials are deemed to have a secular purpose.

The Fourth Circuit's decision in <u>Wood v. Arnold</u>, for example, is directly on point here. There, the Court determined that the inclusion of a segment on Islam in a high school world history class did not violate the Establishment Clause. 915 F.3d 308 (4th Cir. 2019). In <u>Wood</u>,

as here, the plaintiff challenged the defendants' course materials, which included a worksheet in which students were required to analyze the teachings of Islam.  Id. at 312.  The worksheet also contained the statement "[t]here is no God but Allah and Muhammad is the messenger of Allah[,]" (called "the Shahada") and required students to write a portion of the Shahada.  Wood, 915 F.3d at 313.  Id. at 312-13 (emphasis in original).  The plaintiff argued that the assignment compelled his daughter (a student in the class) to "den[y] the very existence of her God" and "impermissibly endors[ed] and advanc[ed] the Islamic religion."  Id. at 313.

The Fourth Circuit disagreed.  In analyzing the disputed materials, the Court held that "context is crucial[,]" particularly with respect to the first prong of the Lemon Test – whether the purpose of the materials is secular.  Id. at 314-15.   Based on the materials having been presented in the context of the school's comparative world religion class, the Court held that the purpose of the materials was sufficiently secular.  Id. at 315-16.

Analyzing the second prong of the Lemon Test, the Court further held that the purpose of the curriculum was "having the class read, discuss, and think about Islam[,]" as opposed to a situation in which, for example, students were required to participate in daily Islamic religious exercises.  See id. at 317.  As a result, the Court held that the primary effect of the school exercises "was to teach comparative religion, not to endorse any religious belief."  Id. at 18.  Likewise, the Court held that the assignments neither advanced nor inhibited any religion.  See id.

Courts across the United States have similarly upheld a school board's discretion in creating a curriculum where religious materials are presented as part of a class on comparative religion or world history.  See, e.g., Smith v. Bo. of School Com'rs of Mobile Co., 827 F.2d 684, 689 (11th Cir. 1987) (holding the use of social studies and history textbooks, which did not

contain references to the religious aspects of certain historic events, did not violate the

Establishment Clause because it did not advance the religion of Humanism or inhibit Christianity

since the primary use of the textbooks was consistent with the secular purpose of educating in the

area of history and social studies); Fleischfresser v. Directors of School District 200, 15 F.3d

680, 686 (7th Cir.1994) (upholding school's required readings from school reader that offended

parents with certain religious views and recognizing "the broad discretion of a school board to

select its public school curriculum"); Sherman v. Community Consolidated School District 21 of

Wheeling Township, 980 F.2d 437, 445 (7th Cir. 1992) (quoting Mozert v. Hawkins County Bd.

of Educ., 827 F.2d 1058, 1064-65 (6th Cir. 1987) (Boggs J. concurring opinion)), holding that

"'school boards may set curricula bounded only by the Establishment Clause' even though pupils

may find the books and classroom discourse offensive or immoral").

By contrast, courts have held that religious teachings violate the Establishment Clause

where students are asked to participate in religious exercise that is *not* integrated into a broader

curriculum.  See, e.g., Lee v. Weisman, 505 U.S. 577, 598-99 (1992) (holding that requiring

students to stand for graduation prayer constituted compelled participation in religious ritual);

Engel v. Vitale, 370 U.S. 421, 424-25 (1962) (striking down morning prayer due to the

inherently religious nature of prayer); Stone v. Graham, 449 U.S. 39, 41-42 (1980) (holding that

posting the Ten Commandments on a public school classroom wall violated the Establishment

Clause).

Here, the constitutionality of the Newton school curriculum is obvious under each

element of the Lemon Test.  As in Wood, the curriculum includes Islam as part of a history and

comparative religious studies course which also includes the study of other religions.  See Wood,

915 F.3d at 314-16.  Also, like Wood, the principal effect of the curriculum is to allow students

to "read, discuss, and think about Islam[.]"  See id. at 317-18.  Such learning and analysis is explicitly required under the Curriculum Framework.  Finally, since the Newton curriculum neither advances nor inhibits any religious views, it does not "foster an excessive government entanglement with religion[,]" and therefore meets the third prong of the Lemon Test.  See id. at 318.

Put simply, the Newton school curriculum alleged to be at issue is precisely the type of protected curriculum which has been historically upheld.  Plaintiffs' claim fails as a matter of law.

### B.  **Plaintiffs' Free Exercise Claim Fails as a Matter of Law.**

So too, Plaintiffs' Free Exercise claim fails as a matter of law.

The Free Exercise clause of the First Amendment requires that Congress make no law prohibiting the free exercise of religion.  Since the free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires, the Free Exercise doctrine prohibits the government from, for example, "(1) compel[ling] affirmation of religious beliefs; (2) punish[ing] the expression of religious doctrines it believes to be false; (3) impos[ing] special disabilities on the basis of religious views or religious status; or (4) lend[ing] its power to one side or the other in controversies over religious authorities or dogma."  Parker, 514 F.3d at 103; see also McDaniel v. Paty, 435 U.S. 618 (1978) (holding that the Free Exercise Clause "categorically prohibits government from regulating, prohibiting, or rewarding religious beliefs as such," either directly or indirectly); Grove v. Mead Sch. Dist. No. 354, 753 F.2d 1528, 1533-34 (9th Cir. 1985) (noting that the inclusion of a book that was religiously offensive in a literature class did not violate parent's free-exercise rights); Curtis v. Sch. Comm. of Falmouth, 420 Mass. 749, 763 (1995) (holding that mere exposure at public schools to offensive programs

does not amount to a violation of free exercise and that "[p]arents have no right to tailor public school programs to meet their individual religious or moral preferences").

To establish a violation of the Free Exercise Clause, a plaintiff must establish that the challenged governmental action creates a burden on the plaintiff's exercise of her own religion. See United States v. Lee, 455 U.S. 252, 256-57 (1982). The Supreme Court has made clear that in a Free Exercise claim there must be a "substantial burden" on the practice of an individual's religion, such that the burden is coercive or compulsory in nature. See School Dist. of Abington v. Schempp, 374 U.S. 203, 222-23 (1963). Similarly, the Supreme Court has held that although all citizens have a right to the free exercise of their religion, "[t]he Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 448 (1988). Such limitations are necessary because, in the absence of such limitations, granting parents the constitutional right to dictate individually what the schools teach their children would impose an untenable burden on a state's educational system. See Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 533-34 (1st Cir. 1995).

In the education context, courts have routinely found that school boards have wide discretion to set their own curriculum. See Parker, 514 F.3d at 105; see also Griswold v. Driscoll, 616 F.3d 53, 59 (1st Cir. 2010) (similarly, upholding the Massachusetts Board of Education's discretion in setting state-wide curriculum, holding that "there is no denying that the State Board of Education may properly exercise curricular discretion"). This applies even when that curriculum includes teachings about elements of religion. See, e.g., Parker, 514 F.3d at 105. As the First Circuit has recognized, "exposure to ideas through the required reading of books d[oes] not constitute a constitutionally significant burden on the plaintiffs' free exercise of

religion." Id. at 105 (quoting Mozert, 827 F.2d at 1065, with approval).  To the contrary, the

Free Exercise Clause prohibits "governmental compulsion either to do or refrain from doing an

act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required

by one's religion," and reading or even discussing the books did not compel such action or

affirmation.  Parker, 514 F.3d at 105 (quoting Mozert, 827 F.2d at 1065); see also Mozert, 827

F.2d at 1065 (holding that requirement that public school students read basic reader series chosen

by school authorities did not create an impermissible burden on students' exercise of their

religion where students were not required to affirm or deny any religious belief or choose

whether or not to performance a religious exercise or practice).

Similarly, courts have held that there is no violation of the Free Exercise Clause where a

parent disagrees with educational materials presented at school but is able to instruct his or her

child in a manner that comports with his or her beliefs religious beliefs outside of the school.

See Freedom From Religion Found. v. Hanover Sch. Dist., 665 F. Supp. 2d 58 (D.N.H. 2009),

aff'd, 626 F.3d 1 (1st Cir. 2010) (holding that "[a] parent whose child is exposed to sensitive

topics or information at school remains free to discuss these matters and to place them in the

family's moral or religious context, or to supplement the information with more appropriate

materials."); Fleischfresser, 15 F.3d at 689-90 (elementary reading curriculum's inclusion of

materials that presented values conflicting with plaintiffs' Christian beliefs did not violate the

Free Exercise Clause where burden on free exercise rights was, at most, minimal; where parents

were not precluded from meeting their religious obligation to instruct their children; and neither

the students nor their parents were compelled to do anything or refrain from doing anything of a

religious nature).

Here, Defendants did not require that students in any way repudiate their faith or profess any belief contrary to their own religious beliefs.  Plaintiffs have failed to allege facts that establish "any burden on their ability to exercise their religion[.]"  See Parker, 514 F.3d at 103. As set forth above in the facts, the complained of course materials do not endorse or promote Islam but rather describe what "*Islam believes*."  Similarly, although the assignments that Plaintiffs object to in their Complaint ask students to identify and analyze information regarding Islam, there is no pressure on the students either to accept these same beliefs as their own or to denounce their faith in any way.  Rather, these assignments ask students to develop an understanding of historic Islam as one world religion, and to develop the skills to discuss it as part of a discussion of diverse religions.  As such, the curriculum is entirely lawful.

### C.   The Curriculum Concerning the Arab-Israeli Conflict is Likewise Protected.

Plaintiffs' allegations concerning the teaching of the history and politics of the Arab-Israeli conflict do not even implicate the Establishment or Free Exercise Clauses.  Rather, they are directed at entirely secular and political topics.  As such, Plaintiffs can articulate no claim under either clause with respect to this aspect of the curriculum.

Specifically, Plaintiffs' Complaint alleges that the  curriculum includes maps relating to the highly disputed borders of Israel and Palestine that are inaccurate (see Complaint, ¶¶102-06); that students were asked to analyze a one-state versus two-state solution (see id., ¶¶113-15); and that NPS allowed students to present pro-Palestinian viewpoints at the 2017 and 2018 Middle East Day programs.  See id., ¶¶90-92, 130-31, 134-38.  These allegations do not provide a basis for a challenge under the Establishment or Free Exercise Clauses because these portions of the curriculum are solely historical and political, and would not be understood by any reasonable person to be religious or implicate religion.  Political speech is fully protected under the First

Amendment, in the absence of that speech being fighting words or presenting a clear and present danger, neither of which is alleged in the Complaint.  See R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 391 (1992); Terminiello v. City of Chicago, 337 U.S. 1, 4-5 (1949).

### Conclusion

For all of the reasons set forth above, as well as the reasons articulated by Defendants, the Amici respectfully request that the Court dismiss the Complaint in its entirety.  The Amici also respectfully request that the Court provide them five minutes of oral argument to address the contents of this brief.

Respectfully Submitted,

NEWTON TEACHERS ASSOCIATION, INC., NEWTON INTERFAITH CLERGY ASSOCIATION, FAMILIES ORGANIZING FOR RACIAL JUSTICE, MASSACHUSETTS TEACHERS ASSOCIATION, AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC. AND NATIONAL LAWYERS GUILD, MASSACHUSETTS CHAPTER, INC.

By their attorneys,


  /s/ Maria T. Davis
Howard M. Cooper (BBO# 543842)
hcooper@toddweld.com
Maria T. Davis (BBO# 675447)
mdavis@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Date: July 8, 2019

## CERTIFICATE OF SERVICE

I, Maria T. Davis, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 8, 2019.


   /s/ Maria T. Davis
Maria T. Davis