UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN DECHTER, LEON KADIS, MERRY SMITH, TRAUTE MARSHALL, GEORGE FLESH, and REBECCA KATZ <br><br>       Plaintiffs <br><br>    v <br><br> CITY OF NEWTON SCHOOL COMMITTEE, RUTH GOLDMAN, in her official capacity as NEWTON SCHOOL COMMITTEE CHAIRPERSON, DAVID FLEISHMAN in his official capacity as NEWTON SUPERINTENDENT OF SCHOOLS, HENRY TURNER in his official capacity as PRINCIPAL OF NEWTON NORTH HIGH SCHOOL, JOEL STEMBRIDGE in his official capacity as PRINCIPAL OF NEWTON SOUTH HIGH SCHOOL, JONATHAN BASSETT in his official capacity as CHAIR OF THE HISTORY AND SOCIAL SCIENCES DEPARTMENT OF NEWTON NORTH HIGH SCHOOL, JENNIFER MORRILL in her official capacity as CHAIR OF THE HISTORY DEPARTMENT OF NEWTON SOUTH HIGH SCHOOL, DAVID BEDAR in his official capacity as HISTORY TEACHER AT NEWTON NORTH HIGH SCHOOL, and JAMIE RINALDI in his official capacity as HISTORY TEACHER AT NEWTON SOUTH HIGH SCHOOL <br><br>       Defendants | C. A. NO. 19-10736-DJC <br><br><br><br> **PLAINTIFFS' REPLY TO AMICUS BRIEF AND SUR-REPLY TO DEFENDANTS' REPLY** |

Plaintiffs have not had fair and reasonable time to review and respond to all the arguments made and case law cited in Defendants' Reply and the Amicus Brief. However, Plaintiffs seek to briefly address—and dispense with—the primary thrust of the legal analysis in both filings, which centered on the Fourth Circuit's recent opinion in *Wood v. Arnold*, 915 F.3d 308, 315 (4th Cir. 2019), *petition for cert. filed*, No. 18-1438 (U.S. May 16, 2019). Defendants failed to cite *Wood* at all in their Motion to Dismiss and its accompanying memorandum, depriving Plaintiffs of the chance to discuss it in their Opposition;

but both Defendants and Amici now heavily rely on *Wood v. Arnold*, 915 F.3d 308 (4th Cir. 2019),

*petition for cert. filed*, No. 18-1438 (U.S. May 16, 2019) in calling on the Court to dismiss Plaintiffs'

claims "at the earliest possible opportunity." Defendants assert that *Wood* is a case "nearly identical to

that presented here." Amici argue that *Wood* is "directly on point here."

Both these arguments are skewed. They focus on the superficial similarity between a small

portion of the assignments challenged in the First Amended Complaint on the one hand, and the entirety

of the two assignments challenged in *Wood* on the other hand. Defendants and Amici ignore the

procedural posture and history of *Wood*. The complaint in *Wood* survived its motion to dismiss. *See*

Wood v. Arnold, No. GJH-16-00239, slip op. denying motion to dismiss, at 15-16 (D. Md. Sept. 30,

2016), attached. Wood lost on and appealed from a summary judgment. *See Wood v. Arnold*, 321 F. Supp.

3d 565, 2018 U.S. Dist. LEXIS 55011 (D. Md. 2018). In fact, in ruling on Defendants' motion to dismiss,

the District of Maryland had this to say:

> In the Complaint, Plaintiffs allege that "Defendants' curriculum, practices, policies, actions,
> procedures, and customs promote the Islamic faith by requiring students to profess the five pillars
> of Islam and to write out faith statements of the religion. Defendants require that students write
> out and confess the Shahada, the Islamic Profession of Faith." ECF No. 1 ¶ 7. The Supreme Court
> has stated, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high
> or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matter of
> opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ.*
> *v. Barnette*, 319 U.S. 624, 642 (1943) Therefore, construing the facts in the light most favorable
> to the Plaintiffs, Plaintiffs have stated a claim that has been "clearly established" since Barnette.
> Plaintiffs cannot be compelled to "confess" a religion consistent with the Establishment Clause
> and Free Speech Clause of the First Amendment. *Wood v. Arnold*, No. GJH-16-00239, slip op.
> denying motion to dismiss, at 15-16 (D. Md. Sept. 30, 2016).

> By importing its holding on appeal from summary judgment into their arguments for the prompt

dismissal of Plaintiffs' claims, Defendants and Amici seek the benefits of the factual determinations in

Wood without having to go through discovery and the fact-finding process that was due and granted to

*Wood* by the District of Maryland in the slip opinion. *Id.* They ask the Court to deny this process to

Plaintiffs.

*Hilsenrath* v. *School Dist. of the Chathams*, No. 18-966 (KM), 2018 U.S. Dist. LEXIS 100100, at

*2 (D.N.J. 2018) is the case that is *truly* directly on point here as to both the facts and the standard by

which they must be judged on a motion to dismiss. In *Hilsenrath*, which is currently in its discovery

stage, Plaintiff alleges that her child "has been exposed to two videos and a worksheet that contain

materials that members of the Islamic faith use to express religious beliefs or proselytize others." *Id.*

Like in *Wood*, the District of New Jersey in *Hilsenrath* denied the school defendants' motion to

dismiss, in an opinion that Plaintiffs respectfully seek to cite from at length because it is particularly

apropos to the case at bar:

> The defendants have moved to dismiss the complaint, stating that they have not promoted,
> endorsed, or proselytized on behalf of any religion. *Rather, say the defendants, the students study
> world religions as part of their academic education in a class called World Cultures and
> Geography.* That yearlong class, they say, covers many areas of the world, and embraces such
> subjects such as geography, trade, art, social, economic and political structures, and everyday life,
> as well as religions and religious texts. Many religions, they say, are covered, but to study them is
> not to endorse or promote them. One unit of the class covers the Middle East and North Africa,
> and materials concerning the Islamic faith, say defendants, are a necessary part of that unit. They
> allege that the class has no parochial focus or agenda; the materials regarding Islam, according to
> defendants, must be understood as but one component of a comprehensive social studies
> curriculum.
>
> *I need not endorse either party's position to recognize that there is a dispute here which requires
> the development of a factual context.* This complaint, as complaints do, makes allegations which
> are yet untested by any fact finder. The motion to dismiss, as such motions sometimes will,
> makes other, also untested statements about the broader curriculum and the educational process.
> No evidence, however, is yet before the court. Such factual, context-dependent issues cannot be
> resolved at this very early stage of the litigation.
>
> *Let me put it another way. As a lawsuit, this matter may present controversial issues. As a motion
> to dismiss, it does not. There will be opportunity enough to consider the substantive issues when
> evidence has been developed in discovery and the facts have been developed.* For now, I will
> deny the motion to dismiss with minimal discussion.
>
> . . .
>
> Defendants respond that under the Lemon regime, there is no blanket prohibition on the
> presentation of information about religion in the context of an academic class. *See Stone v.
> Graham*, 449 U.S. 39, 42, 101 S. Ct. 192, 66 L. Ed. 2d 199 (1980). *The court, they say, cannot
> take a single religious statement from the curriculum and treat it as if it were the school
> authorities' own statement of belief; it must view the context and the totality of the circumstances
> to determine whether religion is being endorsed or promoted.* See, e.g., Def. Reply Brf. 5-6
> (citing Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 40, 124 S. Ct. 2301, 159 L. Ed.
> 2d 98 (2004) (O'Connor, J., concurring in judgment); ACLU v. Black Horse Pike Reg'l School
> Bd., 84 F.3d 1471, 1485-86 (3d Cir. 1996).

So far, so good; citation of legal authority is fair game on a motion to dismiss. *But defendants' motion falls afoul of the basic principle that the Complaint's allegations must be assumed to be true on a motion to dismiss. Defendants attempt here to deny the plaintiff's allegations or supplement them with allegations of their own.* The videos on Islam, defendants emphasize, occupied a small part of the school year. They were part of a curriculum that covered many cultures and religions and would have been understood in that context. This material, they say, could not be viewed as an endorsement of a particular religious faith or a call to conversion.

The Complaint, however, alleges otherwise*. However valid, or not, the defendants' arguments may turn out to be, they furnish no basis for dismissal of the complaint.* The information about the totality of the curriculum, for example, does not appear on the face of the complaint. *And the sensitive balancing required by Lemon cannot be performed on the basis of mere allegations. Such considerations are simply premature.*

The case upon which the defendants primarily rely only underscores that point. *California Parents for Equalization of Educ. Materials v. Noonan*, 600 F. Supp. 2d 1088 (E.D. Cal. 2009), rejected a claim that a school textbook presented Hinduism in a denigrating matter. It held that the information, though religious in nature, was permissibly presented in the context of a course on world history and geography. Noonan so held, however, on summary judgment, with the benefit of a full factual record—not on a motion to dismiss. *Hilsenrath v. School Dist. of the Chathams*, No. 18-966 (KM), 2018 U.S. Dist. LEXIS 100100, at *3-4, 6-8 (D.N.J. 2018) (emphasis added).

In their First Amended Complaint, Plaintiffs allege that Defendant Estin's students are coerced to "write the Shahada, or the core testament of the Islamic faith, in English or in Arabic, for presentation in class" on a banner of their own artistic creation—a much more significant "confess[ion] by . . . act" than the assignment in Wood turned out to be. First Amended Complaint, ¶ 97. Plaintiffs allege that, "[u]ttered with conviction, [the *Shahada*] is considered the only act necessary under Islamic law to convert to Sunni Islam." *Id.* Plaintiffs allege that students were coerced to profess three of the five Islamic pillars of faith through simulation exercises. *Id.* at ¶¶ 95-100. Plaintiffs allege that students were "coerced to perform Quranic exegesis for a grade," *id.* at ¶ 101, including passages of the Quran that preach the Islamic theory of creation, akin to the "creationism statute" held unconstitutional in *Edwards v. Aguillard*, 482 U.S. 578, 590-591 (1987). Indeed, this is not just a case of school prayer or confession of faith; thus Defendants' and Amici's arguments based on school prayer case law alone come up short. Plaintiffs also allege that Defendants promote religious dogma as fact, specifically:

[W]hen it comes to historically-accurate facts about the history of the holy texts of the major world religions, North "selects from the body of knowledge a particular segment which it proscribes for the sole reason that it is deemed to conflict with a particular religious doctrine; that is, with a particular interpretation of the [dates and sources of the Old Testament, the New

Testament, and the Quran] by a particular religious group." *Id.* at ¶ 91, citing *Epperson v. Arkansas*, 393 U.S. 97, 106 (1968).

Plaintiffs have met—and exceeded—the notice pleading standards met by plaintiffs in both *Wood* and *Hilsenrath* at the motion to dismiss stage. Like the plaintiffs in both *Wood* and *Hilsenrath*, Plaintiffs here should also be permitted to proceed through discovery. Plaintiffs respectfully ask the Court to deny Defendants' Motion to Dismiss.

<div style="margin-left:40%">

PLAINTIFFS
By their attorney,


____/s/_____
Karen Hurvitz
BBO No. 245720
Law Office of Karen D. Hurvitz
34 Tanglewood Drive
Concord, MA 01742
(617) 513-3365
HurvitzLaw@comcast.net

</div>

<div style="text-align:center">CERTIFICATE OF SERVICE</div>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 9, 2019.

<div style="margin-left:40%">

/s/_____
Karen Hurvitz

</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **MELISSA WOOD, et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: GJH-16-00239** |
| **BOARD OF EDUCATION OF** | * | |
| **CHARLES COUNTY, et al.,** | * | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

In this action, Plaintiffs Melissa Wood and John Kevin Wood, individually and on behalf of their then minor child, "C.W.,"[1] allege various violations of their First Amendment rights, Fourteenth Amendment due process rights, civil rights under Title IX and Title VI, and rights granted by Article 36 of the Declaration of Rights of the Constitution of Maryland, and bring suit against Defendants Board of Education of Charles County ("The Board"), Evelyn Arnold ("Principal Arnold"), and Shannon Morris ("Vice Principal Morris") (collectively, "Defendants"). Presently pending before the Court is the Plaintiffs' Motion for a Preliminary Injunction, ECF No. 17, and Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 28. A hearing on the Motions was held on September 23, 2016. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, the Court will deny Plaintiffs'

---

[1] In this Opinion, the Court will continue to refer to the Woods' child by her initials, "C.W.," mirroring Plaintiffs' initial Complaint, ECF No. 1. The Court was informed at the hearing, however, that she has reached the age of majority since the Complaint was filed, and therefore anticipates that Plaintiffs will file an amended complaint in her name.

Motion for a Preliminary Injunction and grant in part, and deny in part, Defendants' Motion to

Dismiss.

## I.      BACKGROUND

This case arises out of events allegedly occurring in Charles County, Maryland,

beginning in October 2014. ECF No. 1 ¶ 49–109.[2] During the 2014–2015 school year, C.W. was

a 16-year-old student in the eleventh grade at La Plata High School in La Plata, Maryland, *id.* ¶

49, and was enrolled in eleventh grade World History class, *id.* ¶ 52.[3] On October 22, 2014,

C.W. was instructed to finish "a graded assignment to complete certain faith statements

fundamental to the Islamic belief system." ECF No. 1 ¶ 53. Mr. Wood learned of the homework

assignment when his daughter came home from school that day. *Id.* ¶ 55. Mr. Wood was

"surprised" to learn of the assignment, because there was no information about the "teaching and

promotion of Islam" in the class syllabus. *Id.* From a discussion with C.W. and a review of the

class materials, Mr. Wood believed that the school was promoting the Islamic religion over other

faiths. *Id.* ¶ 54. Plaintiffs allege that Defendants "required the students . . . to profess statements

on the teachings and beliefs of Islam in written worksheets as graded homework assignments"

and instructed the class that "[m]ost Muslim's faith is stronger than the average Christian." *Id.* ¶¶

58–59. Attached to the Complaint as Exhibit 1 is what appears to be an outline or power-point

used in the class describing "Islam Today," "Islamic Empires," "The Rise of Islam," and

"Beliefs of Islam." ECF No. 1-1. The World History course allegedly "spent only one day

discussing Christianity" and "failed to cover any portion of the Bible or other non-Islamic

religious texts, such as the Ten Commandments." ECF No. 1 ¶ 65–66.

---

[2] Unless stated otherwise, all facts herein are taken from Plaintiffs' Complaint and presumed for purposes of the
Motion to Dismiss to be true. ECF No. 1.
[3] The pleadings do not indicate who taught the World History class.

The Woods objected to their daughter "being given religious instruction and being indoctrinated in Islam." *Id.* ¶ 73. To that end, on October 22, 2014, Mr. Wood called La Plata High School to "voice his disapproval and to request that his child be given an alternative assignment." *Id.* ¶ 75. Mr. Wood spoke with Defendant Shannon Morris, Vice Principal of La Plata High School, on October 23, 2014. *Id.* ¶ 76. Vice Principal Morris did not offer to give C.W. an alternative assignment and "asserted that C.W. would receive zeros on incomplete assignments." *Id.* ¶¶ 78, 80. Mr. Wood informed Vice Principal Morris that C.W. "would not be completing the assignments that promoted Islam," and if Defendants "wished to retaliate against C.W. for her adherence to her Christian faith, he would pursue his complaints through lawyers and the media." *Id.* ¶ 82–83.

The following day, on October 24, 2014, Mr. Wood received a phone call from La Plata High School Resource Officer Mark Kaylor, of the Charles County Sheriff's Office. *Id.* ¶ 84. Officer Kaylor advised Mr. Wood that Vice Principal Morris had filed a complaint against Mr. Wood, and that Principal Arnold had signed a "No Trespass Order," forbidding him from entering the grounds of La Plata High School. *Id.* ¶¶ 84, 86. As a result of the No Trespass Order, Mr. Wood missed "countless Parent Teacher School Organization ("PTSO") meetings, planning events for C.W., . . . and events where C.W. has been honored for her academic achievements." ECF No. 1 ¶ 90.

Plaintiffs filed the instant Complaint in this Court on January 27, 2016, seeking declaratory and injunctive relief, damages, and attorneys' fees under 42 U.S.C. § 1983 based on various First and Fourteenth Amendments claims, Title IX of the Education Amendments of 1972, Title VI of the Civil Rights Act of 1964, and Article 36 of the Declaration of Rights of the Maryland Constitution. ECF No. 1. Plaintiffs then filed a Motion for Preliminary Injunction on

February 19, 2016. ECF No. 17. The No Trespass Order was lifted on March 3, 2016, 16 months

after it was entered. *See* ECF No. 27 at 1. Defendants filed a Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment on March 24, 2016. ECF No. 28.

## II.   STANDARD OF REVIEW

### A.  Preliminary Injunction

The purpose of a preliminary injunction is to "protect the status quo and to prevent

irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to

render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d

517, 525 (4th Cir. 2003). The grant of a preliminary injunction is an "extraordinary remedy that

may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dewhurst*

*v. Cty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Resources*

*Defense Council*, 555 U.S. 7, 22 (2008)). The party moving for a preliminary injunction must

demonstrate four requirements before the court will grant the injunction: (1) the movant is likely

to succeed on the merits; (2) the movant is likely to suffer irreparable harm in the absence of

preliminary relief; (3) the balance of equities tip in the movant's favor; and (4) the injunction is

in the public interest. *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188 (4th Cir. 2013)

(citing *Winter*, 555 U.S. at 20).

### B.  Motion to Dismiss

A defendant may move to dismiss a complaint for failure to state a claim upon which

relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule

12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 664. In evaluating a motion to

dismiss, the court must consider all well-pleaded allegations in a complaint as true, and must

construe all factual allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v.*

*Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A Rule 12(b)(6) motion should be granted "only if it

is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

### C.  Motion for Summary Judgment

A party may also move for summary judgment under Fed. R. Civ. P. 56(a). "The court

shall grant summary judgment if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the

"initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of the pleadings . . . together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 466 U.S.

317, 323 (1986) (internal citation omitted). In considering the motion, "the judge's function is

not . . . to weigh the evidence and determine the truth of the matter, but to determine whether

there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). To

withstand a motion for summary judgment, the nonmoving party must do more than present a

mere scintilla of evidence. *Phillips v. CSX Transport, Inc.*, 190 F.3d 285, 287 (4th Cir. 1999).

Rather, "the adverse party must set forth specific facts showing that there is a genuine issue for

trial." *Anderson*, 477 U.S. at 250.  Although the Court should draw all justifiable inferences in

the nonmoving party's favor, the nonmoving party cannot create a genuine issue of material fact

"through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Defendants have styled their motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a motion for summary judgment under Rule 56. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *McCray v. Md. DOT.*, No. ELH-11-3732, 2013 U.S. Dist. LEXIS 8513, at *15 (D. Md. Jan. 16, 2013); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion. *Id.* at *16. Typically, all parties must then be given the opportunity to present all material pertinent to the motion, Fed. R. Civ. P. 12(d), but when the moving party captions its motion "in the alternative" and presents evidence outside the pleadings for the Court's consideration, the parties are deemed to have notice that the Court may treat the motion as one for summary judgment under the parameters of Rule 12(d). *McCray*, 2013 U.S. Dist. LEXIS 8513, at *17.

Here, the Court will consider matters outside of the pleadings in analyzing the retaliation claims and will therefore convert the motion into one seeking summary judgment as to those claims.

## III.   DISCUSSION

### A.  Mootness

Article III of the Constitution grants courts the authority to adjudicate "Cases" and "Controversies." U.S. Const. art. III, § 2. "In our system of government, courts have no business

6

deciding legal disputes or expounding on law in the absence of such a case or controversy."
*Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 726 (2013). A case is moot, and therefore
unreviewable, when the issues presented are no longer "live" or the parties lack a "legally
cognizable interest in the outcome." *Id.*; *see also United States v. Hardy*, 545 F.3d 280, 283 (4th
Cir. 2008). "No matter how vehemently the parties continue to dispute the lawfulness of the
conduct that precipitated the lawsuit," a case is moot if the parties' dispute is "no longer
embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC*,
133 S.Ct. at 727.

Generally, when student plaintiffs challenge the constitutionality of their school's
policies, their claims for declaratory and injunctive relief become moot when the student
graduate. *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003); *see also Bd. of Sch. Comm'rs of
the City of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (finding the action moot where all named
plaintiffs had graduated and case was not certified as a class action). Graduated students often
claim the familiar exception to the mootness doctrine that the harm is "capable of repetition, yet
evading review." *Mellen*, 327 F.3d at 364. But "[t]his exception is only applicable where: (1) the
challenged action is too short in duration to be fully litigated before the case will become moot;
*and* (2) there is a reasonable expectation that the complaining party will be subjected to the same
action again." *Id.* (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)) (emphasis added). Thus, such
claims are usually unsuccessful since graduated students will generally not be subjected to the
challenged school policy in the future. *Mellen*, 327 F.3d at 364.

Here, C.W., the only named plaintiff who was or will be a student at La Plata High
School, has apparently graduated as of June 2016. ECF No. 29 at 4; ECF No. 30 at 6. C.W. will
therefore never again be subjected to any alleged harm from Defendants' "religious instruction

that violates her fundamental constitutional rights" or "religious instruction that endorses Islam or that favors Islam over Christianity." *See* ECF No. 1 at 24. To avoid a finding of mootness on this point, Plaintiffs rely on cases such as *Morse v. Frederick*, 551 U.S. 393 (2007) and *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874 (7th Cir. 2011). These cases are readily distinguishable and do not control the instant case.

In *Morse*, the Supreme Court granted certiorari on two questions several years after the student-plaintiff, Joseph Frederick, had graduated: (1) whether the student-plaintiff had a First Amendment right to wield his "Bong Hits 4 Jesus" banner at a school event, and (2) whether that right was so clearly established that the school principal who punished Frederick could be held liable for damages. *See Morse*, 551 U.S. at 400. Although Plaintiffs are correct that the Supreme Court granted certiorari after Frederick had graduated, the injunctive relief Frederick sought was "to remove the reference to the ten day suspension from his school records." *Frederick v. Morse*, 439 F.3d 1114, 1117 (9th Cir. 2006), *rev'd and remanded*, 551 U.S. 393 (2007). Such relief, which was clearly directed at an on-going injury to the plaintiff, is markedly different from C.W.'s request here to "[p]ermanently enjoin Defendants . . . and successors in office from funding and implementing religious instruction that endorses Islam . . .," ECF No. 1 at 24, which no longer relates to any actual controversy about Plaintiffs' particular legal rights.[4] Additionally, a request for declaratory judgment does not alone save a case from mootness when claims for injunctive relief are moot. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding that declaratory judgment was improper where lack of continuing violation rendered injunctive relief moot and damages were unavailable); *see also Bauchman ex rel. Bauchman v. West High Sch.*,

---

[4] During the motions hearing, counsel mentioned an adjustment of C.W.'s grade as a potential form of injunctive relief. While such a request might be more consistent with the relief sought in *Morse*, it does not appear in either the proposed order attached to the Motion for Preliminary Injunction, ECF No. 17-2, or in the Prayer for Relief in the Complaint, ECF No. 1 at 24-25.

132 F.3d 542, 548 (10th Cir. 1997) (deciding that because student-plaintiff's claims for injunctive relief were moot, declaratory judgment would have no effect on defendants' behavior toward student and would be superfluous to adjudication of student's § 1983 damages claim).

Plaintiffs also rely on *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874 (7th Cir. 2011) for the proposition that injunctive relief is not mooted as long as it "describe[s] in reasonable detail the acts to be enjoined" and "run[s] in favor of unnamed members of a [specified] group," such as current students. ECF No. 29 at 4 (citing *Zamecnik*, 636 F.3d at 879). In *Zamecnik*, the Seventh Circuit entered an injunction allowing students at a high school to wear the slogan "Be Happy, Not Gay" on their clothing. *Zamecnik*, 636 F.3d at 878. However, while the permanent injunction in *Zamecnik* was applied to non-party students, the district court entered the injunction before one of the named plaintiffs had graduated. *Id.* ("so [Plaintiff] could by virtue of the injunction have displayed [the slogan] on his graduation gown if he wanted to."). Here, C.W., as the only named student-plaintiff, has already graduated.

Additionally, to the extent Plaintiffs seek to enjoin enforcement of the "No Trespass Order," it has been lifted, *see* ECF No. 22-1; ECF No. 27, and the Woods have not alleged that they have any other children at La Plata High School or will have any other children at the school in the future. Hence, Plaintiffs' requests to "declare that the trespass order is a nullity" and "enjoin Defendants from enforcing the no trespass order against Plaintiff John Kevin Wood and enjoin Defendants from issuing any no trespass orders against Plaintiff John Kevin Wood without constitutionally sufficient notice and opportunity to be heard" are also moot. *See* ECF No. 1 at 24; ECF No. 27. Thus, the Motion for Preliminary Injunction is denied as moot and the claims for injunctive relief in the Complaint are dismissed.

Although Plaintiffs' requests for prospective relief—an injunction—are moot for the reasons stated above, their request for retrospective relief—monetary damages—is not moot. *See Mellen* 327 F.3d at 365 ("Although Plaintiffs' claims for declaratory and injunctive relief are moot, their damage claim continues to present a live controversy."). Thus, the Court will now turn to those claims.

### B.  42 U.S.C. § 1983 and Sovereign Immunity

Plaintiffs assert a number of constitutional violations pursuant to 42 U.S.C. § 1983. Defendants argue that they are not "persons" subject to suit under section 1983 and enjoy sovereign immunity under the Eleventh Amendment from such claims. Section 1983 provides that:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding . . .

42 U.S.C. § 1983 (emphasis added). In *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978), the Supreme Court determined that municipalities and other local government units are liable as "persons" under Section 1983. But in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), while explicitly not overruling *Monell*, the Supreme Court held that States, unlike municipalities, are *not* "persons" under Section 1983. 491 U.S. at 66–69. This holding was based on the Court's finding that in passing Section 1983, Congress "had no intention to disturb the States' Eleventh Amendment immunity" and alter the balance between federal and state sovereignties. *Will*, 491 U.S. at 66; *see also Pennhurst State Sch. & Hosp. v.*

10

*Halderman*, 465 U.S. 89, 99 (1984) (recognizing that while Congress has the power to abrogate

Eleventh Amendment immunity enjoyed by States, its desire to do so must be "unequivocal").

This Court has consistently held that county boards of education in Maryland, such as the

Board here, are state agencies and therefore protected by immunity from suit under section 1983.

*See Shank v. Baltimore City Bd. of Sch. Comm'rs*, Civil Action No. WMN-11-1067, 2014 WL

198343, at *2 (D. Md. Jan. 14, 2014) ("The Court finds that the Board is an arm of the state and,

as an arm of the state, is entitled to immunity from suit under § 1981 and § 1983."); *James v.

Frederick Cty. Pub. Schs.*, 441 F. Supp. 2d 755, 760 (D. Md. 2006) (dismissing § 1983 claim

against county school board based on Eleventh Amendment immunity); *Chi v. Bd. of Educ. of

Harford Cty.*, Civ. No. 93-3569, 1995 WL 131288, at *3 (D. Md. Feb. 6, 1995) (holding that

Eleventh Amendment immunity barred plaintiff's claims against Board of Education under §

1983).

Plaintiffs rely on *Shapiro v. Baltimore City Bd. of Educ.*, Civil Action No. MJG-96-2895,

1997 U.S. Dist. LEXIS 24686, at *21 (D. Md. Aug. 21, 1997), among several other cases, for the

proposition that boards of education are "persons" under Section 1983 and therefore are not

entitled to immunity. ECF No. 29 at 6. Plaintiffs' argument is misplaced. In *Shapiro*, the Court

determined that immunity did not apply because *Shapiro* involved a contract dispute, and "the

State and its agencies have waived immunity when contract actions are involved." *Shapiro*, 1997

U.S. Dist. LEXIS 24686, at *20. Unlike *Shapiro*, the instant case is not a contract action.[5] Hence,

---

[5] Additional cases relied on by Plaintiffs are similarly unpersuasive. First, *Paxman* operated under the assumption that *Virginia* school boards were local governing bodies rather than state entities. *Paxman v. Campbell*, 612 F.2d 848, 857 (4th Cir. 1980). This is a significant distinction as the treatment of county boards of education is a state-specific issue. *See Lewis v. Bd. Of Educ.*, 262 F.Supp.2d 608, 614 (D. Md. 2003) ("Maryland law, through statute and judicial opinion, treats the county school boards as agents of the state."). Second, the court in *Parker*, while lamenting the lack of "reasoning for the conclusion that county school boards are 'arms of the state,'" distinguished county fire departments from county school boards, *inter alia*, on the grounds that county fire departments, unlike county school boards, have not had their field "pre-empted" by state law and do not receive "substantial funds" from the state. *Parker v. Anne Arundel County*, Civil Action WMN-00-850, 2001 U.S. Dist. LEXIS 3462, at *10-12 (D.

the Court here determines that the Board of Education of Charles County is not a "person" under

Section 1983 and enjoys sovereign immunity.

To the extent that Defendants Evelyn Arnold and Shannon Morris are sued in their

official capacities as "Principal of La Plata High School" and "Vice Principal of La Plata High

School," sovereign immunity also applies. ECF No. 1; ECF No. 17. State officials acting in their

official capacity, like States, are not "persons" under 42 U.S.C. § 1983. *See, e.g.*, *Will v.*

*Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *see also Rosenfeld v. Montgomery*

*County Public Schools*, 41 F. Supp. 2d 581, 585–86 (D. Md. 1999) (dismissing a § 1983 claim

and stating that "Eleventh Amendment immunity extends to all . . . claims for retrospective

monetary damages against state officials acting in their official capacities."). Therefore, the

Court dismisses all claims under 42 U.S.C. § 1983 against the Board and Principal Arnold and

Vice Principal Morris in their official capacities.[6]

### C.  Qualified Immunity

Plaintiffs also bring suit against Defendants Evelyn Arnold and Shannon Morris in their

individual capacities. ECF No. 1 at 1. Government officials sued in their individual or personal

capacities may be entitled to "qualified immunity." *See, e.g.*, *Lane v. Franks*, 134 S.Ct. 2369,

2381 (2014). Government officials performing discretionary functions are entitled to qualified

immunity from liability for civil damages to the extent that "their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

---

Md. Mar. 19, 2001). Third, *Beka Indus. v. Worcester Cty. Bd. of Educ.*, 419 Md. 194, 212 (2011), like *Shapiro*, was
a contract case, and discusses county boards' relation to the state in the context of the General Procurement Law.
[6] At oral argument, Counsel for Defendant argued that Plaintiffs' suit should be construed only against Defendants
Arnold and Morris in their official capacities, and that a finding of sovereign immunity would therefore resolve the
case. However, on the face of the Complaint, ECF No. 1 at 1, Plaintiffs have brought suit against Defendants Arnold
and Morris "individually," as well. Therefore, the Court will also address Plaintiffs' claims against Defendants
Arnold and Morris in their individual capacities.

known." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). "Qualified immunity protects all

but the plainly incompetent or those who knowingly violate the law." *Id.*

Courts have traditionally applied a two-step inquiry to determine whether to grant

qualified immunity to a government official, first determining whether, viewed in the light most

favorable to the plaintiff, the defendant violated the constitutional rights of the plaintiff. *Cole v.

Buchanan Cty. Sch. Bd.*, 328 F. App'x. 204, 207 (4th Cir. 2009). If a constitutional right was

found to be violated, courts would then determine whether that right was "clearly established,"

such that "a reasonable official would understand what he [or she] is doing violates that right."

*Id.* at 208 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In *Pearson v. Callahan*, 555

U.S. 223 (2009), the Supreme Court abandoned this "rigid two-tiered approach," *see Cole*, 328

F. App'x at 207, noting that fixed adherence to the two-step inquiry can "result in a substantial

expenditure of scarce judicial resources on difficult [constitutional] questions that have no effect

on the case's outcome . . . ." *Pearson*, 555 U.S. at 224. Thus, after *Pearson*, courts may "grant

qualified immunity without first deciding whether a constitutional violation occurred so long as

the right claimed to be violated was not clearly established." *Cole*, 328 F. App'x at 207; *see also

Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010)

("[I]t is within our discretion to decide 'which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand.'").

For a right to be "clearly established," a case "directly on point" is not required, but "existing

precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v.

al-Kidd*, 563 U.S. 731, 741 (2011); *Brickley v. Hall*, 828 F.3d 298 (4th Cir. 2016).

### i.  Establishment Clause and Free Speech Claims

In their First Claim, Plaintiffs contend that "Defendants Evelyn Arnold and Shannon

Morris, acting pursuant to School District training, supervision, policies, practices, customs,

and/or procedures, compelled C.W. to participate in instruction and activities that impermissibly

endorse Islam and that favor Islam over Christianity" and "violate[d] the Establishment Clause

by conveying the message that Islam is favored or preferred over any other religious belief."

ECF No. 1 ¶¶ 112, 114. In their Second Claim, Plaintiffs contend that "Defendants deprived

C.W. of her right to be free from government compelled speech in violation of the First

Amendment" and "favor[ed] speech that approves of and promotes Islam over other religions

. . ." ECF No. 1 ¶¶ 117, 119. While the two Claims present slightly different inquiries, they arise

from the same set of facts, and the Court will address them jointly as appropriate.

The Establishment Clause provides that "Congress shall make no law respecting an

establishment of religion." U.S. Const. amend. I. Generally, the constitutionality of government

action under the Establishment Clause is determined by applying the three prongs outlined in

*Lemon v. Kurtzman*, 403 U.S. 602 (1971). Pursuant to *Lemon*, for the action to be constitutional,

(1) the government activity must have a secular purpose, (2) the primary effect of the

government activity must neither advance nor inhibit religion; and (3) the activity must not cause

the government to be excessively entangled in religion. *Id.* at 612–13.[7]

---

[7] Although *Lemon* has not been explicitly overruled, this Court recognizes that the Supreme Court, as well as individual Justices in concurring and dissenting opinions, has suggested that courts not rigidly adhere to a three-part test. *See, e.g.*, *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (declining to reconsider *Lemon* but focusing analysis on whether government action was coercive); *Lynch v. Donnelly*, 465 U.S. 668, 687–94 (1984) (O'Connor, J. concurring) (encouraging Court to focus more on whether government is "endorsing" religion); *County v. Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 655–56 (1989) (Kennedy, J. concurring in part and dissenting in part) (not advocating *Lemon* test as primary guide for resolving difficult Establishment Clause issues); *Mueller v. Allen*, 463 U.S. 388, 393 (1983) (*Lemon* test nothing but helpful signpost). Bearing this in mind, the Court will utilize the *Lemon* test to the extent its framework applies to the case at hand, while avoiding mechanical adherence.

The Free Speech Clause provides that "Congress shall make no law abridging the freedom of speech." U.S. Const. amend. I. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). While "the First Amendment rights of students in the public schools are not automatically coextensive with the rights of adults in other settings and must be applied in light of the special characteristics of the school environment," *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988), it is well-established that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty Sch. Dist.*, 393 U.S. 503, 506 (1969).

In the Complaint, Plaintiffs allege that "Defendants' curriculum, practices, policies, actions, procedures, and customs promote the Islamic faith by requiring students to profess the five pillars of Islam and to write out faith statements of the religion. Defendants require that students write out and *confess* the Shahada, the Islamic Profession of Faith." ECF No. 1 ¶ 7 (emphasis added). The Supreme Court has stated, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matter of opinion or force citizens to *confess* by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added). Therefore, construing the facts in the light most favorable to the Plaintiffs, Plaintiffs have stated a claim that has been "clearly established" since *Barnette*. Plaintiffs cannot be compelled to "confess" a religion consistent with the Establishment Clause and Free Speech Clause of the First Amendment.

Based on the allegations in the Complaint, the Fifth Circuit's recent decision in *Brinsdon* is distinguishable. *See Brinsdon v. McAllen*, No. 15–40160, 2016 WL 4204797 (5th Cir. Aug. 9, 2016). In *Brinson*, the Court rejected a student's constitutional challenge to a requirement that the student recite the Mexican pledge of allegiance in Spanish class. *Id.* at *1. The Court found that because there was no evidence that the required speech involved an attempt to compel the speaker's affirmative belief, there was no violation that was clearly established. *Id.* at *6–7. Similarly, in *Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058 (6th Cir. 1987), the Sixth Circuit found no constitutional violation when public schools required reading of a basic reader series that parents found offensive to their religious beliefs. However, the Court noted, "[i]f the schools had required the plaintiff students either to believe or say they believe that 'all religions are merely different roads to God,' this would be a different case." *Id.* at 1069; *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 187 (3d Cir. 2005) ("[W]hile a public educational institution may not demand that a student profess beliefs or views with which the student does not agree, a school may in some circumstances require a student to state the arguments that could be made in support of such beliefs or views."). Here, while discovery and trial may or may not prove otherwise, Plaintiffs allege in the Complaint that in addition to learning facts about the background and beliefs relevant to Islam, Defendants required C.W. to "confess" the Islamic Profession of Faith, which is more akin to the conduct prohibited in *Barnette*. 319 U.S. at 631–32.[8]

Further supporting the Court's decision, in *Mellen v. Bunting*, 327 F.3d 355 (2003), the Fourth Circuit addressed supper prayers at a state-operated college. The Fourth Circuit found that the supper prayer amounted to an Establishment Clause violation when measured against *Lemon*.

---

[8] Notably, among the listed definitions of "confess" is to "declare faith in or adherence to: profess." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/confess (last visited Sept. 27, 2016).

The Court noted that the communal dining was "obligatory," and because "recitation of a prayer

is undeniably religious, and has by its nature, both a religious purpose and effect," the Court

found the supper prayer had the "primary effect of promoting religion." *Mellen*, 327 F.3d at 372–

74. "Indeed, one of the greatest dangers to the freedom of the individual to worship in his own

way lies in the Government's placing its official stamp of approval upon one particular kind of

prayer." *Id.* at 376 (internal citations omitted). Therefore, at this juncture, based on the

allegations alone, Plaintiffs have stated a constitutional claim under the Free Speech Clause and

the Establishment Clause, and the Court cannot say that qualified immunity applies. Thus,

Defendants' Motion to Dismiss shall be denied as to Plaintiff's first two claims for relief against

Principal Arnold and Vice Principal Morris in their individual capacities.

### ii.  First Amendment Retaliation Claim

In their Third Claim, Plaintiffs allege that "punish[ing] C.W. for expressing her

conscientious objection to participating in Islamic religious instruction," "directing that C.W.

receive a failing grade on assignments promoting Islam," and "banning [John Kevin Wood] from

the school grounds in retaliation for his protected speech" constituted "First Amendment

retaliation." ECF No. 1 ¶¶ 123, 125.

A plaintiff claiming First Amendment retaliation must allege that "(1) she engaged in

protected First Amendment activity, (2) the defendants took some action that adversely affected

her First Amendment rights, and (3) there was a causal relationship between her protected

activity and the defendants' conduct." *See, e.g.*, *Constantine v. Rectors and Visitors of George

Mason University*, 411 F.3d 474, 499 (4th Cir. 2005); *see also Corales v. Bennett*, 567 F.3d 554

(9th Cir. 2009) (clarifying that the third prong requires that "the protected activity was a

substantial or motivating factor in the defendant's conduct."). In the school speech context, the

Court must consider First Amendment rights "in light of the special characteristics of the school environment." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988). With respect to C.W., the question is whether, taking the facts in the light most favorable to the Plaintiffs, it is "clearly established" that "punishing" or giving a "failing grade on assignments" to a student objecting to the religious content of the assignments constitutes First Amendment retaliation.

As a general matter, complaining of a perceived constitutional violation is constitutionally protected activity, subject to appropriate limitations in school speech contexts. *Cf. Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994) (discussing First Amendment protection of "right to speak out" in employment context). And conceivably, giving C.W. a failing grade on the particular assignments complained of could arguably "chill" her First Amendment rights. *See* ECF No. 1 ¶ 124. What is less clear, however, is whether refusing to turn in homework assignments is itself constitutionally protected activity. Even assuming that the law is "clearly established" regarding compelled speech under *Barnette*, the law is certainly not clearly established regarding whether students may "conscientiously object" by refusing to turn in homework assignments, and whether giving a student a lower grade, the customary punishment for missed assignments, could be considered "retaliation." *Cf. Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 513 (1969) (noting that guarantee of free speech does not protect student conduct that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others"); *but see Bauchman ex rel. Bauchman v. West High Sch.*, 132 F.3d 542, 557 (10th Cir. 1997) (rejecting student's claim she was deprived of constitutional right to refrain from singing Christian devotional music because she was given choice to opt-out and was assured her grade would not be affected). Thus, the Court finds that qualified immunity

applies to this claim and grants Defendants' Motion to Dismiss Plaintiffs' Third Claim, First Amendment retaliation, with respect to C.W.

Regarding Mr. Wood, the question is whether, taking the facts in the light most favorable to Plaintiffs, it is clearly established that banning a father from school grounds, following the telephone conversation as described in the pleadings, constitutes First Amendment retaliation. In the letter imposing the No-Trespass Order, ECF No. 1-3, Principal Arnold's apparent reasoning for issuing the No Trespass Order was because Mr. Wood "made verbal threats against the school." According to Plaintiffs, however, "Mr. Wood never actually threatened the school or anyone at the school physically." ECF No. 17 at 12. Plaintiffs claim, rather, that Mr. Wood's "threats" were potential "media coverage and a lawsuit." *Id.* Defendants, unsurprisingly, characterize Mr. Wood's threats differently. *See* ECF No. 22-1. Hence, this is a factual dispute that cannot be resolved at this stage. If the Court accepts the facts as Plaintiffs alleged, which the Court must at this stage, Mr. Wood was banned for threatening to speak out against a perceived violation of the First Amendment. ECF No. 17 at 5–9; ECF No. 29 at 13. The Court will therefore deny Defendants' Motion to Dismiss, converted to a Motion for Summary Judgment, as to Plaintiffs' First Amendment retaliation claim with respect to Mr. Wood.

### iii.  Due Process Claim

In their Fifth Claim, Plaintiffs allege that "Defendants denied Plaintiff John Kevin Wood the opportunity to defend himself against untrue accusations of wrongdoing both before and after banning him from the premises of his child's public school." ECF No. 1 ¶ 134. Plaintiffs claim that "issuing a no-trespass order in a way that creates a high risk of erroneous deprivation of rights and . . . without notice or a meaningful opportunity to be heard" constituted a violation of Mr. Wood's procedural due process rights under the Fourteenth Amendment. ECF No. 1 ¶ 136.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process contains a "procedural component," which imposes constraints on governmental decisions that deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause. *See Mathews v. Eldridge*, 424 U.S. 319, 331 (1976). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). As in the preceding discussion of First Amendment rights, to determine the applicability of qualified immunity, the Court must address whether the law was "clearly established," such that reasonable school administrators in Defendants' shoes would know that their conduct violated Plaintiffs' due process rights.

First, in order to prevail on a procedural due process claim, a plaintiff must establish that he or she has a constitutionally protected "liberty" or "property" interest. *See Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). Here, it is far from clearly established that Mr. Wood had a "liberty" or "property" interest to enter the grounds of La Plata High School. *See Nichols v. W. Local Bd. of Educ.*, 805 N.E.2d 206, 211 (Ohio C.P. 2003) ("Although the education and upbringing of one's children is a recognized liberty interest under the Constitution, this does not create a constitutional right for a parent to attend school activities or be present on school property."); *Mejia v. Holt Pub. Sch.*, No. 5:01-CV-116, 2002 WL 1492205, at *5 (W.D. Mich. Mar. 12, 2002) (noting that while parents have a right to control the education of their children, that does not mean that parents have the right to go on school property).

Moreover, the school officials here had the authority under Maryland state law to deny Mr. Wood access to the school. The Maryland Code of Education provides:

> The governing board, president, superintendent, principal, or
> school resource officer of any public institution of elementary,
> secondary, or higher education . . . may deny access to the
> buildings or grounds of the institution to any other person who acts
> in a manner that disrupts or disturbs the normal educational
> functions of the institution.

Md. Code Ann. Educ. § 26-102(b). "A school board . . . has inherent authority to restrict access

to the property it controls. The Supreme Court . . . has held that '[t]here is no question that the

District, like the private owner of property, may legally preserve the property under its control

for the use to which it is dedicated.'" *Cole v. Buchanan Cty. Sch. Bd.*, 328 F. App'x. 204, 209

(4th Cir. 2009) (citing *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384,

390–91 (1993)). School officials have broad authority and responsibility to ensure that

individuals conduct themselves appropriately on school property. *Lovern v. Edwards*, 190 F.3d

648, 655 (4th Cir. 1999); *see also Carey v. Brown*, 447 U.S. 455, 470–71 (holding that the

Constitution does not leave state officials powerless to prevent conduct that disturbs the schools).

Here, as described in the letter attached to Plaintiffs' Complaint, Principal Arnold acted

pursuant to her authority under "Section 26-102 of the Education Article, Annotated Code of

Maryland," in denying Mr. Wood access to school property and described the basis for her

action. ECF No. 1-3 at 2. A brief review of Maryland state statutes and regulations reveals that

multiple channels of appeal were available to Mr. Wood to contest the No Trespass Order

including appeals to the County Superintendent and the School Board, but he apparently chose

not to utilize them. *See, e.g.*, Md. Code Ann., Educ. § 4-205(c) ("A decision of a county

superintendent may be appealed to the county board if taken in writing within 30 days after the

decision of the county superintendent. The decision may be further appealed to the State Board if

taken in writing within 30 days after the decision of the county board."). There is no evidence in

Plaintiffs' pleadings that Mr. Wood attempted to avail himself of the procedures available to him

or that Defendants prevented him from doing so. Hence, Defendants' actions here did not violate

clearly established rights of Plaintiffs, and qualified immunity applies. The Court therefore

grants Defendants' Motion to Dismiss Plaintiffs' Due Process claims.

### D.  Title VI and Title IX Claims

In their Fourth Claim, Plaintiffs allege that "by forcing C.W. to complete assignments

and attest to religious statements with which she disagreed, and by removing C.W. from the

educational environment and giving her several failing grades, Defendants have treated C.W.

with deliberate indifference to her Christian heritage," thereby violating Title VI of the Civil

Rights Act of 1964 ("Title VI") and Title IX of the Education Amendments of 1972 ("Title IX").

ECF No. 1 ¶¶ 128, 129. Unlike claims under 42 U.S.C. § 1983, States are not immune under the

Eleventh Amendment for alleged violations of Title VI or Title IX. *See* 42 U.S.C. § 2000d-7.

Title VI provides that "[n]o person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance."

42 U.S.C. § 2000d. As a preliminary matter, on its face, this statute lacks a prohibition of

discrimination on the basis of religion. *See Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F.

Supp. 3d 806, 816 (N.D. Ill. 2013), *aff'd*, 772 F.3d 443 (7th Cir. 2014) ("Title VI does not

provide for protection against discrimination on the basis of religion—only race, color, or

national origin."); *Rosario de Leon v. Nat'l Coll. of Bus. & Tech.*, 663 F. Supp. 2d 25, 34–35

(D.P.R. 2009) (concluding that Plaintiff's religious discrimination claim under Title VI fails as a

matter of law because Plaintiff alleges discriminatory actions on the ground of religion, which is

not proscribed by 42 U.S.C. § 2000d).

In Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, ECF No. 29, Plaintiffs do not contend that Title VI covers religious discrimination; instead, Plaintiffs argue that Defendants discriminated against C.W. because she is from the United States, "a predominantly Christian nation." ECF No. 29 at 14–16. While creative, this argument does not bring Plaintiffs under the ambit of protection of Title VI and it is unsurprising that Plaintiffs cite to no case law to support this argument.[9]

Title IX provides that "[n]o person in the United States shall, on the basis of *sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). To support their claim under Title IX, Plaintiffs argue that Defendants "forced [C.W.] to endure lessons" with "sexist statements" such as "[m]en are the managers of the affairs of women" and "[r]ighteous women are therefore obedient." *See* ECF No. 29 at 15–16; ECF No.1-1 at 4. Simply looking at the Complaint and the language of the Title IX statute, it is not alleged that CW was excluded from participation in, denied benefits of or subjected to discrimination under any program or activity based on her sex. Plaintiffs cite to *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135 (N.D.N.Y. 2011) for the premise that "a hostile education environment violates Title IX where the plaintiff did not conform to gender stereotypes." However in *Pratt*, the student-plaintiff was "repeatedly called names like 'pussy,' 'sissy,' and 'girl,' and was mocked with effeminate gestures" by other students, and the school "failed to respond." 803 F. Supp. 2d at 152. The two comments alleged here, which were not directed at C.W. but merely taught as part of a larger class, were not sufficiently severe and

---

[9] It is also ironic that in a case where Plaintiffs are concerned with the alleged state-sponsored establishment of one specific religion, Islam, they argue here that a perceived slight against another specific religion, Christianity, should, with nothing more, be analyzed as a slight against the United States.

pervasive to establish a claim under Title IX. Therefore, the Court dismisses Plaintiffs' claims

under both Title VI and Title IX.

**E.  State Law Claim**

In Plaintiffs' Sixth Claim, Plaintiffs allege a violation of Article 36 of the Declaration of

Rights of the Constitution of Maryland. ECF No. 1 at 22. Although it is not clear that there is a

private right of action for damages under Article 36, *see Baird v. Haith*, 724 F.Supp. 367, 384

(dismissing claim under Article 36 on the grounds that there is "no indication in Maryland law

that there is any private right of action for damages under this Article"), because the Court is

allowing parallel federal claims to survive, and the state law claim is likely no more expansive

than its federal corollary, the Court will, for now, assume without deciding that there is a private

cause of action and will resolve this issue if necessary, at the summary judgment stage.


**IV.     CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiffs' Motion for a Preliminary

Injunction, ECF No. 17, and grant in part, and deny in part, Defendants' Motion to Dismiss, ECF

No. 28. A separate Order follows.


Dated:  September   30   , 2016                          /s/
                                                  GEORGE J. HAZEL
                                                  United States District Judge